---

## JOHN McDONALD V. THE STATE.

### *No. 772. Decided June 8.*

1. **Theft—Principals—Receiving Stolen Property—Charge of the Court.**— See facts stated on a trial for theft, where it was insisted that the evidence showed that defendant was not guilty as a principal in the theft, but if guilty, was guilty of receiving stolen property; upon which it is *Held*, that the court correctly instructed upon the law of principals, and that such charge was applicable to and called for by the evidence.

2. **Same.**—See facts stated, which, though defendant denied having been present at the time and place of the taking, do nevertheless constitute him a principal in the theft within the provisions of our statute, and upon which it would have been surprising should the jury have found him guilty only as a receiver of stolen property.

APPEAL from the District Court of Lamar. Tried below before Hon. E. D. McCLELLAN.

John McDonald and Mary Williams were jointly indicted as principals in the theft of one $10 bill, two $5 bills, $1 in silver, one watch and chain, two pairs of spectacles of the value of $2, two scarf pins of the value of $1.25 each, one cuff button of the value of 25 cents, one money purse of the value of 10 cents, all of the aggregate value of $37.85, the corporeal personal property of one R. W. Emerson.

McDonald, appellant, was alone placed upon trial, which resulted in his conviction for theft of property over the value of $20, with the punishment assessed at imprisonment in the penitentiary for two years.

· R. W. Emerson, who was a white man, and a widower, 49 years of age, with grown children, met Mary Williams, who is a negro woman, on Grand avenue, in Paris, Texas, about 8 or 8:30 o'clock on the evening of the 16th day of April, 1895. Mary made a sign to him, and he followed her home; and, arriving at her house, gave her a dollar and went to bed with her. He went to sleep, and about 12 o'clock was aroused by some one kicking at the door; and before he could say

anything John McDonald, this appellant (a negro man, a school teacher and a barber, who had borne a good reputation at Texarkana for honesty and integrity), broke open the door and stepped into the house, and commenced abusing Mr. Emerson, and wanted to know what he was doing there. And when Mr. E. told him he was staying with Mary, John said Mary was his woman, and told Mr. E. to get out. Mr. Emerson then felt in the bed, and Mary was gone; as were also the clothes he had placed under his pillow when he retired. The clothing was afterwards found on the floor, and upon investigating the pockets, he found purse, watch and chain, and money all gone. He asked McDonald what had become of Mary, and he said he did not know; but said he was an honest darky, who owned considerable property in Arkansas, and that he would do all he could to find the property. They then went up to the square, where they took a drink at a saloon, for which McDonald paid. They soon met a policeman, and Emerson told him his tale of woe and robbery. They went back to Mary's house, and found Mary there alone, and in bed. They interrogated her about Emerson's money and property, and she said she knew nothing about it. While they were talking to Mary, defendant McDonald dropped something on the floor, and the policeman struck a match and picked up a pair of Emerson's lost spectacles. The policeman then arrested both Mary and defendant. On the way up town, defendant asked permission to speak privately to Mary, and after doing so he came back and said that each would give up what they had, on condition that they were not to be prosecuted. Emerson and the officer said all right, and Mary handed the officer two $5 bills; and McDonald said they would have to go to his room, a mile off, to get the property he had. On this trip he only gave them $4 in silver, claiming that it was all of Emerson's property he had. They then went back to Mary's house and searched again for the watch and chain; and not finding them, they informed the defendant and Mary they would prosecute them unless they got all the property. McDonald then said, if they would go back to his room he would give up the watch and chain. This they did, and the officer and McDonald went into the latter's room, and the officer had the watch and chain when he came out. He then took Mary and defendant to jail.

The policeman, Swain, after testifying substantially as above, says: "I went into defendant's house with him, when we went back after the watch. Defendant got the chain from under the bed clothes on his bed, and got the watch out of an old waste basket sitting in the room. After I carried defendant and Mary to jail, I searched defendant and found Emerson's other pair of spectacles in his vest pocket, and found two scarf pins in his coat pocket." This witness says, the next morning he turned the parties over to Polk Burris, the constable.

Polk Burris testified, that he afterwards searched defendant and found a cuff button in his pants pocket. This cuff button was Emerson's, and stolen from him at Mary's house.

Defendant, John McDonald, testified, in his own behalf, that about 9 o'clock p. m., after his barber shop had been closed, he started down to Mary's house, in obedience to a previous invitation. After going two or three blocks he met Mary, who said she was going up town, and handed him a bundle of things she was carrying, and which she said she would give to him. That after getting some beer at a saloon they started out to his house, and on the way Mary gave him $4 in silver and the watch and chain, which he put under the clothes on his bed. They went back to Mary's house. That when they arrived there Mary told him to go to the door and knock, which he did. That hearing some one in the house, he looked around, and Mary was gone. That he went in and found Emerson, and Emerson told him he had been robbed. He says the reason why he did not get and give up Emerson's watch and chain, when he went with the parties the first time to his house, was because at the time he did not know that Emerson had lost a watch and chain; that when they told him he had lost a watch and chain, he went back the second time and got and returned them. He admitted dropping the spectacles at Mary's, but said he had taken them from his pocket to give to the officer, when they dropped out of his hand upon the floor. He admitted that the other pair of spectacles and the scarf pins and cuff buttons were taken from his person after he was put in jail.

As to the law of principals, receiving stolen property, reasonable explanation, alibi, and circumstantial evidence, the court charged the jury as follows:

"All persons are principals who are guilty of acting together in the commission of an offense. When an offense has been actually committed by one or more persons, the true criterion for determining who are principals is, did the parties act together in the commission of the offense; was the act done in pursuance of a common intent, and in pursuance of a previously formed design in which the minds of all united and concurred? If so, then the law is, that all are alike guilty, provided the offense was actually committed during the existence and in the execution of the common design and intent of all, whether in point of fact all were actually bodily present on the ground when the offense was actually committed or not.

"You can not convict the defendant of knowingly receiving stolen property in this case, and if you find that R. W. Emerson's property was stolen as alleged, and that thereafter the defendant was found in possession of the same or a part of the same property, yet if you do not find beyond a reasonable doubt that the defendant participated in the original taking of the property in such manner as to make him a principal thereto, as the term principal is above explained, then you will acquit the defendant, even though you should find that he received such property, knowing it to have been stolen.

"If you should find that R. W. Emerson's property was stolen, and that Mary Williams was the person who took it, and if you do not

find that the defendant participated in the original taking of the property so as to make him a principal thereto, as the same is herein before explained, then the fact (if it was a fact) that Mary Williams gave a part of the stolen property to the defendant would not make the defendant guilty of such theft, and you will in such case acquit the defendant.

"If you find that R. W. Emerson's property was stolen, as alleged, and that recently thereafter a part of such stolen property was found in possession of the defendant McDonald, and if when first called upon, or the occasion first arose for an explanation by him of his possession, he gave one that was natural, reasonable, and probably true, then you can not consider such possession by him as evidence against him that he committed the theft, unless the other evidence in the case shows that his explanation was false; but the falsity of the defendant's explanation may be shown as any other fact may be, by circumstantial evidence.

"Among other defenses set up by the defendant is what is known in legal phraseology as an alibi; that is, that if the offense was committed, as alleged, then the defendant was, at the time of the commission thereof, at another and different place from that at which such offense was committed, and therefore was not and could not have been the person who committed the same.

"Now, if the evidence raises in your minds a reasonable doubt as to the presence of the defendant at the place where the offense was committed (if it was committed) at the time of the commission thereof, you will find the defendant 'not guilty.'

"In this case, the State relies for a conviction upon circumstantial evidence alone, and in order to warrant a conviction upon such evidence, each fact necessary to establish the guilt of the accused must be proved by competent evidence, beyond a reasonable doubt, and the facts and circumstances proved should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of his guilt, and producing in your minds a reasonable and moral certainty that the accused committed the offense."

No briefs have come to the hands of the Reporter.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, Jᴜᴅɢᴇ.—Appellant was convicted of theft of property over $20 in value, and allotted two years in the penitentiary as his punishment.

Motion for new trial was urged in the court below, because the court's charge upon the law of principals was not correct, and because the evidence showed that appellant was only guilty of receiving stolen property. The charge is correct, and enunciates the law in regard to

principals in conformity with the decisions of this court, and was applicable to and called for by the evidence adduced on the trial. The evidence fully justified the jury in finding that appellant was a principal, as charged. While the appellant himself testified that he was not present at the time and place of theft, yet all the facts, taken together, clearly make him a principal within the provision of the statute. The jury did not give credence to statements of appellant that he was but a receiver of the stolen property, and under the evidence before us it would have been surprising if they had done so.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.