### RYAN BARNETT v. THE STATE.

No. 14000.　Delivered May 13, 1931.
Rehearing Denied November 25, 1931.

The opinion states the case.

*Callaway & Callaway,* of Brownwood, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for theft; punishment, five years in the penitentiary.

The indictment in this case charged theft in the usual form. The proof showed that the owner of the alleged stolen money drew it out of a bank and delivered it to appellant to be used by him in a game of poker, at which the owner was present but not, if his testimony is true, participating. The state claimed that appellant represented to said owner at the time that he was absolutely sure to win upon hands already dealt, and claimed by appellant to be both known to him,—and that appellant would at once return to said owner his money, $2,000, and in addition would divide with him $4,000 which appellant claimed to be the amount of a roll of bills put in the pot by appellant's opponent in the game, and

which would be won by appellant beyond doubt. According to the testimony of the prosecuting witness, when a show-down of hands was had, appellant claimed that he won and raked in the contents of the pot. Witness said he demanded his money, but that appellant and his opponent insisted that they be permitted to play another hand, during which the third party, who had been introduced to witness as Dr. Loyd, but whose real name later was found to be Creech,—suddenly grabbed all the money and ran out of the room. Witness said he got up and started after Dr. Loyd, but was detained by appellant who assured him that he should wait there and that he, appellant, would at once go and stop Loyd and bring the money back. Instead of doing this, said witness testified that through a window he saw Dr. Loyd and appellant in a car leaving going toward Fort Worth.

There seems no question of the right of the state to ask conviction for theft upon such facts, though the indictment charged theft in the usual form. Mr. Branch in his Annotated P. C., sec. 2493, cites authorities supporting the proposition that an indictment in the ordinary form for theft will support a conviction on facts showing that the possession of the property was obtained by false pretext. See Brady et al. v. State, 108 Texas Crim. Rep., 606, 2 S. W. (2d) 261. Under the testimony of the state the intent of the owner was not to make appellant his agent, nor to lend the money in any sense so as to create a bailment,—and we think the case neither one of embezzlement nor theft by bailee. Nor does it appear that said witness intended to part permanently with his money, or to part with title thereto. We are of opinion the case is not one of swindling.

Appellant's bill of exception No. 1 to the refusal of a continuance is qualified by the trial court, and as qualified presents no error. For all we know from the bill all the witnesses named in the application for continuance may have appeared and testified upon the trial.

Bill of exception No. 2 is qualified at some length, and as qualified shows no error. Appellant's attorney noted upon said bill after same had been qualified by the court as above stated, that he excepted, and he had attached to said bill a lengthy statement made for and to him by the official court reporter of the court. The fact of such exception is in nowise approved by the trial judge. In such case we do not consider the exception to the qualification but must consider the bill as qualified. Miller v. State, 104 Texas Crim. Rep., 205, 282 S. W., 812. The reason is clear. Every bit of exception, in order to be valid, requires the approval of the trial court. The attorney of the accused can in no case write upon any document the fact of his exception and thus validate same. The bill as qualified shows no error.

Appellant's bill of exception No. 3 purports to complain of the refusal of six special charges referred to as "Set out and copied in his motion

for new trial," but none of which charges are set out in the bill of exception either by their tenor or in substance. Such bill of exception is manifestly insufficient. In section 207, of volume 4, Texas Jur., upon citation of many authorities, it is said that a bill of exception must be complete within itself, and must stand or fall by its own allegations; also that the appellate court must be able to determine from the bill itself whether the complaint in respect of the ruling in question is well founded; that the bill must be made so full and certain in its statements as that in and of itself it will disclose all that is necessary to manifest the supposed error. Nantz v. State, 103 Texas Crim. Rep., 285, 280 S. W., 581; Mills v. State, 102 Texas Crim. Rep., 473, 277 S. W., 1077; Carnes v. State, 101 Texas Crim. Rep., 273, 275 S. W., 1002; Gonce v. State, 112 Texas Crim. Rep., 191, 14 S. W. (2d) 845; Green v. State, 108 Texas Crim. Rep., 664, 2 S. W. (2d) 274; McCall v. State, 113 Texas Crim. Rep., 62, 18 S. W. (2d) 172; Black v. State, 111 Texas Crim. Rep., 372, 13 S. W. (2d) 100, and many others cases are cited supporting the proposition above stated. In section 208, vol. 4, of the same work appears the statement that the court will not look beyond a bill of exception, nor refer to other parts of the record to supply omissions or make a bill complete, or to ascertain whether error has been committed. Mitchell v. State, 111 Texas Crim. Rep., 101, 10 S. W. (2d) 87; Searcy v. State, 89 Texas Crim. Rep., 478, 232 S. W., 319; Mills v. State, 102 Texas Crim. Rep., 473, 277 S. W., 1077; Ard v. State, 101 Texas Crim. Rep., 545, 276 S. W., 263; French v. State, 99 Texas Crim. Rep., 429, 269 S. W., 786, are cited to support the text. None of the special charges appearing in the transcript bear any notation of exception, nor do they indicate at what time in the proceedings they were presented to the court, and same are insufficient to call for any ruling. This court has many times and with elaborate care endeavored to lay down rules governing the preparation of such bills of exception. However, we have examined and analyzed each of said special charges, and think refusal of none of same presents reversible error.

Bill of exception No. 4 complains of the refusal of special charge No. 6, which is one of those above referred to. There is nothing in said bill of exception that shows or suggests that said special charge was presented after the conclusion of the evidence and before the argument began, nor is there notation on the charge to such effect. Section 260, volume 4, Texas Jur., cites numerous authorities supporting the proposition that to authorize a review of the refusal to give specially requested charges it must be shown, either by a formal bill of exceptions or by a notation on the charges themselves over the signature of the judge, that the requested charges were presented to the judge before the main charge was read to the jury, that they were refused, and that exception was taken to the action of the court in refusing to give them. Stovall v. State, 112

Texas Crim. Rep., 230, 16 S. W. (2d) 242; Barker v. State, 109 Texas Crim. Rep., 67, 2 S. W. (2d) 851; Rambo v. State, 96 Texas Crim. Rep., 387, 258 S. W., 827; Hull v. State, 94 Texas Crim. Rep., 137, 249 S. W., 1061; Solomon v. State, 110 Texas Crim. Rep., 122, 7 S. W. (2d) 960; and many other cases are cited supporting the text. We have considered the refusal of this special charge, however, in connection with the others set out in the motion for new trial. Bill of exception No. 5 complains of the refusal of a peremptory instruction. We think same properly refused.

The facts in this case show that appellant and a man named Creech, who was going under the name of Dr. Loyd, went to the Carmichael boarding house in the town of Granbury, and that appellant met Weeden, the owner of the alleged stolen property and insisted that Weeden accompany him to said room where he wanted to introduce him to Dr. Loyd, who was engaged in the business of procuring oil leases. Weeden accompanied appellant to said boarding house and was introduced to Creech by appellant as Dr. Loyd. According to his testimony appellant suggested that they have a game of cards, and upon being informed that prosecuting witness did not play, appellant and the supposed Dr. Loyd engaged in the game. Presently appellant took Weeden aside and informed him that Loyd knew little about the game, and that Loyd had a large sum of money, to-wit: $4,000, and that if appellant had $2,000 he would call the hands which had already been dealt to each party in the game, and that beyond doubt he would win Dr. Loyd's $4,000, and that if witness would procure for him the sum of $2,000 and let him use it for that purpose, witness being present, appellant would win the money, and would at once return the $2,000 to prosecuting witness, and would give him in addition $2,000 more which he would win. Relying upon these statements Weeden went with appellant to the bank, cashed a check for $2,000, and accompanied appellant back to the room where the $2,000 were put in the pot and the bet called, and appellant, claiming that he won the money, raked in the contents of the pot. We think these facts show a clear case of guilt.

No error appearing, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant urges that we should regard the notation on bills of exception over his attorney's signature as a sufficient exception to the court's qualification to said bills; it is further insisted that the case of Miller v. State, 104 Texas Crim. Rep., 205, 282 S. W., 812, cited in our original opinion, does not support our holding, but is dicta.

As suporting the proposition that this court is bound by the qualification to a bill unless an objection or exception to the qualification is

authenticated by the trial judge, and that the mere notation of objection to the qualification over the attorney's signature is insufficient, we cite section 195, volume 4, Texas Jurisprudence. In the notes under said section will be found collated Ashley v. State, 107 Texas Crim. Rep., 465, 296 S. W., 892; Scherpig v. State, 112 Texas Crim. Rep., 61, 13 S. W. (2d) 872; Whitehurst v. State, 111 Texas Crim. Rep., 607, 13 S. W. (2d) 376; Williams v. State, 111 Texas Crim. Rep., 378, 13 S. W. (2d) 112; Serna v. State, 110 Texas Crim. Rep., 220, 7 S. W. (2d) 543, 544.

In the latter case it is stated that "objection to the qualification must be authenticated by the trial judge, either over his signature in connection with the bill itself, or by a separate bill." See also Nicholson v. State, 107 Texas Crim. Rep., 631, 298 S. W., 436. Many other cases supporting the proposition will be found collated in the notes under section 195, volume 4, Texas Jurisprudence.

Notwithstanding the unsatisfactory manner in which the questions are brought forward for review we will consider special charges Nos. 5 and 6, the refusal of which is insisted upon as error. Special charge No. 5 follows: "* * * you are instructed that before you can convict the defendant it would be necessary for the State to prove beyond a reasonable doubt that defendant had in his mind, at the very time the money was delivered to him by Weedon, if you should find it was so delivered, that said defendant had in his mind the specific intent then to steal or take said money by stealth; and if you should believe at the very time said money was delivered to defendant by the said Weedon, that said defendant then intended to play or wager at a game of cards with said Weedon, and to thus acquire said money, or if you have a reasonable belief that such might have been the facts, then in that event you will find the defendant not guilty and so say by your verdict."

Article 1413, P. C., reads: "The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

The gravamen of the offense of theft by false pretext is that accused came into possession of the property by a willing surrender of it to him by the owner, he, however, being induced to so deliver possession by a false pretext or device, and with the fraudulent intent on the part of accused at the very time he came into possession of it to appropriate it to his own use, followed by such appropriation. See Porter v. State, 23 Texas App., 295, 4 S. W., 889. In so far as special charge number five required the jury to believe beyond a reasonable doubt that at the very time the money

was delivered to appellant he had the fraudulent intent to appropriate it, the subject was covered by the main charge. Said charge proposed to further tell the jury that before conviction could result appellant must have had in his mind at the time he received the money "the specific intent then to steal or take said money by stealth." Such language seems to convey the idea that the appropriation of said money must be accompanied by stealth. This is not a sound legal proposition. If possession of the money was obtained by a false pretext or device with the intent on the part of appellant to appropriate it, the manner of consummating the appropriation would appear to be immaterial. The charge was properly refused.

That part of the charge which would have informed the jury that if at the time the money was delivered by Weedon to appellant he intended to play or wager it at a game of cards *"with Weedon"*, and thus acquire the money, seems to be entirely without support in the testimony. All the evidence is to the contrary.

Special requested charge No. 6 reads as follows: "* * * if you should find or believe from the evidence, or if you should have a reasonable doubt that such were the facts, that prosecutor, J. M. Weedon, entered into a card or poker game with the defendant or other parties and bet or wagered his said money in said game and in that manner lost the same; or if you should believe that said J. M. Weedon delivered the said money to defendant Ryan Barnett, for the purpose of being bet and wagered at a game of cards and you believe that defendant did bet or wager said money at said game, either under the instructions of prosecutor Weedon or with his consent, and thereby lost said money, then you will find the defendant not guilty and so say by your verdict."

The first part of said charge is subject to the same criticism as was special charge No. 5, in that there is no testimony raising the issue that Weedon entered into the card game. The latter part of said charge entirely ignores the issues (1) whether appellant obtained possession of the money by false pretext or device, and (2), the absence or presence of fraudulent intent at the very time he did come into possession of it. The evidence showed that Weedon did deliver the money to appellant to wager at a game of cards. To have given the charge as framed would have been equivalent to an instruction to acquit. Of course, if the money was delivered by Weedon to appellant to be wagered at a game of cards in the absence of any false pretext or device, or without intent on appellant's part at the time he took possession of it to appropriate it to his own use, appellant would not be guilty of theft, but special charge No. 6 ignores both of these propositions. The court therefore was not in error in refusing said charge.

We have again carefully examined the facts. We can not agree with appellant's contention that the evidence does not support the conviction.

Appellant and the man known as Dr. Loyd on the day of the alleged offense had gone to Mrs. Carmichael, rented from her a room, representing that they were getting oil leases for the Texas Oil Company. They advised her that they would like a table in the room to put their blue prints on. A table was put in the room. After thus setting the stage appellant went out to secure the victim. He insisted that Weedon go with him to meet his friend, Dr. Loyd, whom he described as a very charming person. Upon being assured by Weedon that he was not interested in his friend Loyd, appellant then insisted that Weedon go with him to where appellant and his wife were staying. Upon reaching the place appellant's wife was not there, but Dr. Loyd was. Weedon was invited into a card game but declined. Appellant and Loyd then engaged in a game in Weedon's presence and appellant was apparently winning Loyd's money. Upon a certain hand being dealt appellant called Weedon out and asked permission of Dr. Loyd to take both hands with him, assuring Dr. Loyd that he would not look at his (Loyd's) hand. Upon getting outside the room he exhibited both hands to Weedon, and assured him if he had $2,000 to bet he could win $4,000 from Loyd and in this way induced Weedon to go to the bank and get the $2,000, and turn it over to appellant to bet on the game, with the assurance that the same $2,000 would be returned to him, and also one-half of the amount which was sure to be won from Loyd. Upon playing that hand out appellant claimed to have won the money and Weedon immediately demanded the return of his $2,000. Loyd suggested that they play another hand to which Weedon consented. Either the second hand was played, or was ostensibly played, and Loyd claimed to have won the money back. He hastily departed with it. When Weedon attempted to follow he was restrained by appellant who said he would get the money and return it. Instead, he departed in a car with Loyd. We do not attach the same importance as appellant to the fact, if it be a fact, that Weedon consented to the playing of another hand. The money he parted with had never been returned to him. It was still in appellant's possession. The transaction must be viewed in its entirely, and not be cut into fragments. The facts lead to the inevitable conclusion that a conspiracy had been formed between appellant and Loyd of which Weedon was the victim. Appellant secured possession of the money by the pretext heretofore stated. If it was the purpose of the conspiracy to eventually appropriate the money it would be immaterial whether that was done upon the playing of the first hand or of a subsequent hand. The facts in Porter v. State, 23 Texas App., 295, 4 S. W., 889, are similar in many respects to those discoverable in the present record. The charge of the court set out in the opinion in that case very clearly and pertinently states the law controlling. The facts of this case call forcibly to mind the old story told in rhyme of the "Spider and the Fly." In that instance, after weav-

ing his webb, the spider seemed patient to wait for the fly to appear. In this instance, after having the web all set, the fly was sought for and brought in.

"Will you walk into my parlor?" said the Spider to the Fly.

"'Tis the prettiest little parlor that ever you did spy;

The way into my parlor is up a winding stair,

And I have many curious things to show when you are there."

Not the least curious of which was a card player not only willing for his opponent to leave the room with his own hand of cards, but also to entrust him with both hands, a performance difficult of explanation save upon the theory that it was in furtherance of the conspiracy then rapidly culminating. Unless the sensibilities of Weedon, as claimed by him, had been dulled by the few drinks of liquor he had taken at appellant's invitation, his credulity is absolutely astounding. The facts might furnish material for a story which could with propriety bear the title "A Sucker's Credulity" or "A Card Sharp's Sad End."

Finding ourselves unable to agree with any of appellant's contentions, and believing, after a most careful re-investigation of the record, that the conclusion announced in our original opinion is correct, the motion for rehearing is overruled.

*Overruled.*