CLARENCE BOWERS v. THE STATE.

No. 20580. Delivered November 8, 1939.
Rehearing Denied December 20, 1939.

The opinion states the case.

*Heidingsfelder & Wander,* of Houston, and *H. G. Hart,* of Mt. Pleasant, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged by indictment with theft, evidently by a false pretext, and was assessed a penalty of ten years in the penitentiary.

The facts from the State's standpoint indicate that appellant and one P. R. Stokes were companions in a scheme to obtain from the complaining witness, one Reuben McGowan, $700.00 in money. The witness was an aged negro man seventy-one years old, a basket maker, living by himself in San Jacinto

County, Texas. About October 1, 1937, this Stokes got the negro in an automobile by means of promising the negro $2.00 if he would accompany Stokes to some kinspeople of McGowan's in order to sell such kinsfolk some life insurance. They passed the road leading to these kinsfolk's house, and continued over into San Jacinto County, where they eventually stopped at a filling station and beer joint, where the negro met this appellant, the owner of this station. Mr. Stokes began there to instruct the complaining witness in the intricacies of a card game, the said witness contending that he did not know how to play cards. Eventually the three parties, Stokes, appellant and the negro repaired to a "dilapidated" house some one hundred yards from the filling station, and there began a game of cards. After playing awhile, the game was finished, and Stokes informed the old negro that they had won $4,200.00 from appellant, and appellant exhibited a large roll of bills, which it was said contained a large amount of money, and, in order for appellant to pay off, it was necessary for Stokes and the negro to produce $1,100.00 in cash. They did not seem to have that sum present, and Stokes said that his sister who owned the Burch hotel in Conroe had $2,500.00 of Stokes' money in the bank, and they would go there and get this $1,100.00. Stokes and the negro went to Conroe, and Stokes went into the hotel, leaving McGowan in the car. Soon Stokes came out and said his sister was gone and he could not get the money, and asked the negro if he did not have that much money. The negro said yes, but his money was in the bank at Sheppard. Mr. Stokes then told the negro that they would go to Sheppard and get the money there. They went to Sheppard and the negro drew out of the bank $688.00 which together with $12.00 he had in his pocket, made $700.00. The pair then returned to appellant's place of business, and found appellant waiting in the "dilapidated" house. Mr. Stokes had already made many extravagent promises to the negro, telling him that he would not lose his money; that he would rather have his arm pulled out than that McGowan should lose this money; that he hoped that he (Stokes) would die the next minute if the negro lost his money, etc. Upon the return to this house Stokes announced that they had only obtained $700.00, but it seems that Stokes and appellant "decreased" the amount to $700.00 after some argument, and at such time Stokes directed the negro to produce the money from his pocket; the negro reluctantly did so, and Stokes proceeded to count the same. When it was ascertained that the full $700.00 was there, Stokes placed the money in a paper bag in front of appellant, and appellant picked up the bag and placed

the money in his, appellant's, pocket. The lamentations of McGowan immediately followed, but only availed him to the extent of the return of $10.00, appellant retaining the balance. The State's testimony further shows that sometime in June, 1938, after appellant had been indicted herein, and had made bond, he came to the district attorney's office and told such attorney that he had only gotten $350.00 of this negro's money; that he and Stokes had divided the money, and asked the attorney that if he paid the old negro back the $350.00 appellant had gotten, would it help him any in his trial. The district attorney suggested that such a return of the money would be very commendable in appellant, and appellant indicated at such time that he might sell or pledge some of his property and pay McGowan this $350.00, but the next time the district attorney saw appellant was after the sheriff brought him back from Kansas.

Appellant's defense was that he engaged in a poker game with the negro, who won for awhile, but finally lost the $700.00 with which appellant is herein charged with stealing. This defense is bolstered up by the testimony of appellant's wife, as well as a young man who worked for him at the filling station. Evidently appellant's theory was not believed by the jury, their verdict being an indication that they accepted the old negro's version of the transaction. The careful trial court gave a requested instruction stating, in substance, that if the appellant had won the money from McGowan in a wager on a game of cards, then same would not constitute theft, nor an essential element of theft.

Appellant's bill of exceptions No. 1 complains of the failure of the trial court to place P. R. Stokes on trial first for this alleged offense. It appears that pending the hearing of said motion Stokes filed a like motion, asking that appellant be first tried in this matter. The court then gave the two defendants an opportunity to settle their differences relative to priority of trial, which they were unable to do. Appellant being in jail and Stokes out on bail, the trial court ordered appellant to trial first, in keeping with the court's custom to try all jail cases first if possible. We see no error in such a proceeding.

Bill of exceptions No. 2 complains of the fact that while the complaining witness McGowan was on the stand, he was handed a pack of playing cards, and after having testified that he had never played cards in his life, on re-direct examination by the State's attorney the witness was asked to "make" these cards, meaning to shuffle them. The witness stated that he

could not do so. It appears from the bill's qualifiication that the deck of cards was handed to the witness by defendant's attorney, in an attempt to prove that the witness knew the different cards in the pack, after the witness had said, in substance, that he did not know one card from another. It was then that the witness was asked to "make" these cards. We see no serious error presented herewith. The matter seems to have been initiated by appellant's attorney, and this bill is overruled.

Bills Nos. 4, 5 and 6 relate to the allowing of certain witnesses to testify as to the good reputation of the complaining witness Reuben McGowan for truth and veracity in the neighborhood in which he resided. The only objection certified thereto by the court was "I object to the form of the question." A perusal of the questions shows that same was in proper form.

It appears that the testimony of this witness was sharply contradicted by three witnesses, and he underwent a sharp cross-examination which attempted to show that the witness lost his $700.00 in a gambling game with appellant, and was now telling a fabricated story relative to the whole transaction, and was lying about the whole thing. It was further shown that witness was a seventy-one year old negro who lived in an adjoining county, and was a stranger in the county of the trial. Under these circumstances we think the rule mentioned by Mr. Branch in his Penal Code, p. 115, Sec. 184, is applicable: "If the witness is in the situation of a stranger and is assailed on cross-examination by questions attacking his credibility and tending to bring him into disrepute before the jury, he may be sustained by proof of his general reputation for truth. Phillips v. State, 19 Texas Crim. App. 163; Crook v. State, 27 Texas Crim. App. 241; 11 S. W. 444; Harris v. State, 49 Texas Crim. Rep. 339, 94 S. W. 227; Goode v. State, 57 Texas Crim. Rep. 220, 123 S. W. 606; Contra: Payne v. State, 40 Texas Crim. Rep. 294, 50 S. W. 363."

Bill of exceptions No. 7 relates to an objection to a statement testified to by McGowan to the effect that when witness left appellant's place of business, appellant had the witness' money; and at the time Stokes left witness McGowan at Conroe, the appellant had witness' money, and Stokes then and there stated that he was going to get it. This was objected to because told in the absence of the defendant. We think the same was admissible on the doctrine that the two conspirators had not at such time divided the money that they had obtained from McGowan, and the acts of either conspirator would continue to be thus admissible against either until such division of the

spoils was successfully obtained by the carrying out of their conspiracy. See Robins v. State, 117 S. W. (2d) 82, and cases there cited.

It seems that this instant case is very similar in its facts to the case of Barnett v. State, 119 Texas Crim. Rep. 594, 43 S. W. (2d) 449, in which this Court held that such similar proven facts constituted theft by false pretext.

We find no error evidenced herein, and the judgment is therefore affirmed.

## ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

In his motion for rehearing appellant insists that the qualifications appended to his bills of exception are not supported by the statement of facts. It is observed that these qualifications were not excepted to by the appellant. Under the circumstances, me must accept them as correct. We quote from 4 Texas Jurisprudence 278, as follows: "If appellant accepts and files a bill with a qualification he is bound by the qualification, which will not only be accepted by the appellate court as correct, but will also control in so far as it is in conflict with the bill as prepared by the appellant's counsel. Moreover, the appellate court will presume that qualifications in a duly certified bill were made with the consent of the accused or his counsel unless the contrary appears over the certificate of the trial judge, and it will accept as correct qualifications to which no objections are filed or no exception taken, in the court below, or to which objection or exception is not verified by the trial court, and will not consult the statement of facts or other parts of the record to verify the statements therein."

As qualified, the bills of exception fail to reflect error.

We remain of opinion that the evidence is sufficient to support the judgment of conviction.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.