JACK VAUGHN V. THE STATE.

No. 20573. Delivered December 6, 1939.

The opinion states the case.

*W. Joe Bryan* and *Fryer & Milstead,* all of El Paso, for appellant.

*Roy D. Jackson,* District Attorney, and *Harold S. Long,* Assistant District Attorney, both of El Paso, and *Lloyd W. Davidson,* State's Attorney of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was convicted of a charge of theft of over $50.00 and given a penalty of seven years in the penitentiary.

The story of the transaction out of which this case comes involves John C. Tallman, the prosecuting witness, and Frank Sherman, appellant's companion in crime, known also by many aliases, who was tried separately and given a sentence of ten

years. The transactions are interesting, and a detailed statement of the things that took place will, in our opinion, be essential to a proper understanding of the disposition which is herein made of the appeal.

From that part of the record about which there is no dispute, we gather that the appellant and Sherman came into the city of El Paso, driving a Buick car bearing a California license, and took rooms at the Lake Hotel. Sherman registered under the name of Adams and gave his address as Fort Worth, Texas, while appellant gave his address as San Francisco. During the two days that followed they were in and out of the hotel many times together. On the date of their arrival, the prosecuting witness Tallman, who was twenty-one years of age and a student of the New Mexico A. & M. College, came into the city with a little more than $80.00 in his pocket. Searching for some of his college associates he found himself in Juarez, Mexico. Soon thereafter Mr. Sherman (Mr. Adams at the Lake Hotel) sought the acquaintance of young Tallman, and it developed that they had mutual friends, which, of course, accounted for the appellant's unusual attention to and interest in the unsuspecting college youth. They became companions in a strange land. Exploration of it began at once. At that time the appellant gave his name as Mr. Roser of Fort Worth, and his business as that of an official of the Humble Oil & Refining Company. While they were viewing the scenes together, they happened to meet a stranger to both of them who gave his name as Alexander (Mr. Sherman at the hotel) who said that he was President of the Alexander Woolen Mills Corporation, Third & Oxford Street, Sidney, Australia. He was the very Mr. Alexander who sold all the woolens to the United States for its Army and Navy. Young Tallman learned this in a casual remark made within his hearing. Alexander was decidedly British and made no effort to conceal the fact. The interesting combination of a high official of the Humble Oil & Refining Company and the president of so large and promising corporation was a climax in the events in the life of this ambitious youngster, and he was soon engrossed in the conversation which took place between them. Alexander was disgusted by some trivial events and particularly one in which he had given a $20.00 bill in payment of a small item and the party receiving it went away to make change but had failed to return. A singular thing this was for the Britisher but a common thing it might be for the American who inhabits particular quarters where the events of this occasion began on the other side of the river. Alexander was disgusted at the poor sportsmanship of the Americans but he did not mind the trivial

matter of the $20.00 for it was no more than the snap of a finger from his roll of $10,000.00 which he nonchalantly exhibited. Mr. Roser, the Humble Oil & Refining Company official, was not excited by the presence of so much money. He naturally would not be, but his patriotism was aroused at the indignation of a foreigner over the act of his fellow American, so his particular missionary duty became that of consoling Mr. Alexander and demonstrating to him that the average of the American sportsmanship was really pretty high. Young Tallman might have seen similar action on the screen but it did not look like a thing in real life, and the new experience was so real that the suggestions of his new companion whose congeniality had so suddenly brought them together were irresistible. Entering into a game of matching of coins soon aroused the curiosity of the Englishman and from all appearance he was sufficiently gullible to be led into the trap framed by Mr. Sherman, whose personality, it may be surmised, took with him as a partner in the transaction young Tallman. They together were sure of winning from Mr. Alexander and then in a secret place they were to meet and divide the spoils equally. The details of the transaction of matching coins which followed is immaterial. A difference arose between appellant and Mr. Alexander (Mr. Sherman in El Paso). The argument became heated and young Tallman was dragged into the controversy which he partially settled with $25.00 of the school funds which he had saved for registration. That was not all. They crossed the line into El Paso. Alexander was furious and the quarrel continued. The liberality of Mr. Roser (alias Mr. Vaughn) had finally developed the thought of a way to make it satisfactory, and at the same time to leave Tallman eventually prosperous. It involved, however, Tallman at the time paying over the balance of the money he had ($59.00) to Mr. Alexander and then coming to Mr. Roser's hotel room to be reimbursed for his money in the "divide up." Disillusionment soon followed. Tallman went to the hotel according to instructions but Mr. Roser was not even registered there. He went back to the hotel where Mr. Alexander claimed to have been registered. Neither could he be found. A new picture appeared before the eyes of young Tallman and he sought the police. Events followed which led to the arrest in Juarez two days later of the appellant and his companion. They were charged with theft. Feature stories in the newspaper carried their pictures. Readers of the stories had had similar experiences. Some of them came to the officers with their story to give assistance. Several other instances, strikingly similar in their staging and almost exact in verbiage, had taken place. These two

strangers had met as strangers many times before. Professionals they were. Not only does the evidence of the many whose companionship Mr. Roser sought reveal as much, but Mr. Tallman saw enough that night to satisfy any sensible man. It was a stereotyped transaction. The grand jury returned indictments against the appellant and his companion and they were separately tried with results as stated above.

Appellant produced no witnesses of his own but the examination of the prosecuting witness by counsel for the appellant and the requested special charge, as embraced in Bill of Exception No. 5, indicate clearly that the defense was a lack of intent on the part of the appellant and his companion to harm Tallman or to take his money from him wrongfully. If the jury should find that he voluntarily and of his own free will and volition delivered the money mentioned in the indictment to the possession of one Roser and that it was at that time the intention of the injured party to pass title as well as possession in furtherance of an agreement previously made, then and in that event they should find the appellant not guilty.

The issue of intent was raised and so far as we can discover, it is the defense in the case. The jury being so charged, the arguments began; counsel for the State prosecuting while the appellant, through his counsel, defended. The District Attorney, in his closing argument, became personal and specific, and objection is raised by Bill of Exception No. 1 to the following language: "Yes, gentlemen, I am satisfied, and I believe that you are satisfied, that John Tallman was robbed by these two crooks, these slickers, these professionals, of his hard earned money, which he had saved for the purpose of paying his registration fee in the College so that he could matriculate this summer."

We are asked to reverse this case because of the argument of counsel for the State, as stated in Bill of Exception No. 1; because of the testimony of the witness Frank Neal, who gave a story of a similar transaction, as detailed in Bill of Exception No. 2; because of the testimony of J. L. Crosswaite to another similar transaction as detailed in Bill of Exception No. 3; because of the testimony of the witness Harry Schecter to another similar transaction, as detailed in Bill of Exception No. 4; and because the court refused to charge the jury that if they found the transaction took place in Juarez, Mexico, they should acquit the appellant.

If the evidence of the witnesses as to similar transactions should be inadmissible, then there would be occasion for consideration of the bill claiming that error resulted from the

argument of the prosecuting attorney. However, this Court is of the opinion that the bills of exception complaining of the admission of the testimony as to other similar transactions in which the appellant, either alone or with the same individual now charged under the name of Sherman, should be overruled. The testimony is admissible for the purpose of showing intent and as showing system, whether the events took place contemporaneously or not. This being true, there should be no question but that the argument of counsel was based upon evidence which was before the jury. See Branch's Ann. P. C., p. 98, Sec. 166, and cases there cited.

In Hennessey v. State, 5 S. W. 215, Judge Willson had before him a case in which the appellant was charged with forging, or altering, an account against the State of Texas for postage stamps, etc. The prosecution was permitted to introduce over objection certain post-office receipts in transactions other than that for which the defendant was being tried. The evidence showed that the matters were handled in a similar manner to that being considered by the court. It was a part of the defense that there was no intent to defraud by altering the instrument charged in the indictment. As to the former transactions, the court said: "If fraudulently made or altered by him, they offered legitimate evidence tending to prove a fraudulent intent on his part in altering, if he did alter, the instrument upon which this indictment is based. That they are not papers of contemporaneous date with the alleged forged paper is not a valid objection to them."

Quoting from Wharton's Criminal Evidence, Sec. 38, Judge Willson laid down what we consider a sound principle, as follows: "When the object is to show system, subsequent as well as prior offenses, when tending to establish identity or intent, can be put in evidence. The question is one of induction, and the larger the number of consistent facts, the more complete the induction is. The time of the collateral inculpatory facts is immaterial, provided they be close enough together to indicate that they are part of a system."

From the case of Melton v. State, 140 S. W. 230, we quote as follows: "It was well said by Judge Davidson for this court, in the case of Ware v. State, 36 Tex. Cr. R. 599, 38 S. W. 198: 'We have heretofore held, and still hold, that it is permissible, when tending to establish identity, intent, or to develop the res gestae, to prove contemporaneous crimes; and this can be done, also, when the object is to show system in crime.*****'."

In a case of receiving and concealing stolen property, it

was held in Kaufman v. State, 159 S. W. 58, that it was proper to show similar transactions in order to show, among other things, intent, motive, and system, and the foregoing quotation from Wharton's Criminal Evidence was again given approval.

The more recent case of Lytton v. State, 101 S. W. (2d) 564, assumes in a very positive and definite way the correctness of the rule and gives adherence to the line of decisions herein referred to and quoted from.

From a very able opinion by Judge Ramsey, while a member of this Court, in the case of Pelton v. State, 132 S. W. 480, we quote the following pertinent statement of the law applicable to the facts of that case as further authority for our holding herein: "In this condition of the record, the State was permitted to introduce proof of other contemporaneous crimes and similar transactions affecting a large number of other laborers and persons in that vicinity, for the purpose of showing that appellant was engaged in swindling generally and in padding pay rolls for the purpose of corroborating Jones and showing the intent and purpose with which he had acted in the transaction now under consideration."

A long list of authorities in the decisions of our courts, as well as text-writers, justify the conclusion which we have reached in this case.

It is perfectly clear from a reading of the record that the only substantial defense relied upon by the appellant was that there was no intention to defraud the witness Tallman in taking his money, but that Tallman willingly and in accordance with a previous gambling transaction, delivered the same to him.

Appellant complains of several charges, one of which related to the place where the prosecution, if any, should be had. There is no dispute in the evidence that the negotiations and activities originated in Juarez but that the final agreement and the passing of the $59.00 charged in the indictment took place in El Paso County, Texas. The court properly refused to submit this question to the jury.

We think also that the main charge amply covered the defense in this case.

The judgment is affirmed.