**Ezell McDONALD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 37050.**

Court of Criminal Appeals of Texas.

Oct. 14, 1964.

Rehearing Denied Nov. 25, 1964.

Second Motion for Rehearing Denied Jan. 13, 1965.

Goodstein & Semaan, San Antonio, on appeal only, for appellant.

James E. Barlow, Dist. Atty., James E. Hope, John G. Benavides and Raymond A. Weitzel, Asst. Dist. Attys., San Antonio, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is theft by false pretext with a prior conviction alleged for enhancement purposes; the punishment, confinement for ten (10) years in the state penitentiary. The appellant pled not guilty and the trial was before a jury.

The State's principal witness, the complainant, David Gilmore, testified that he met one Jesse Gage, co-defendant, on the 22nd day of August, 1963, at a Spartan Store in Bexar County; that Gage, co-defendant, got into complainant Gilmore's truck to be taken to a bus stop and that while en route thereto Gilmore's attention was by an outside force drawn to the appellant, McDonald. McDonald was picked up at a bus stop; and Gage inquired of him about an address of some girl, that appellant replied "there is no address like that." It was agreed that Gage would pay appellant Twenty ($20.00) Dollars and complainant Ten ($10.00) Dollars if they would drive him to colored town. Co-defendant Gage pulled out a roll of money and flashed it around. Gage said he got the money from an insurance check; that he, Gage, told complainant and appellant he lived in Dumas, Georgia. As they drove to colored town appellant directed the route of travel. Upon arriving at their destination appellant got out of the vehicle to check on the availability of some girls; returned and informed Gilmore and Gage there would be a delay, whereupon Gage left the vehicle to attend a restroom. In the absence of co-defendant Gage, appellant informed complainant that the girls were going to take Gage's money, but that he was going to get some of it by the use of three cards. Appellant explained to complainant how the game was to be played, to-wit: appellant would put a rag over his lap and shift the cards around, the red card being the winning card. Gage agreed to a five dollar bet if complainant turned up the card; that appellant would show complainant Gilmore the winning card by flashing the same to him. Appellant won the first bet and on the next bet of fifty dollars appellant took three dollars from complainant and wadded it up. Appellant showed complainant which card to turn up and when he did so co-defendant Gage won the bet. The next bet was for two thousand dollars played the same way with appellant showing complainant the winning red card. Upon this game co-defendant lost the bet but would not pay off because no money was put up by complainant and appellant. Gage said he did not know if they were worth two thousand dollars. Appellant then went and got a Mr. Reese who was unable to loan appellant two thousand dollars to show his worth. Appellant asked complainant *to show* two thousand dollars and complainant suggested his truck titles to which co-defendant Gage replied "I can't read or write," so appellant told complainant if he would show two thousand dollars, he, *appellant,* would win two thousand dollars and give complainant one thousand. Complainant was *just to show* two thousand dollars since appellant said "*I've* won two thousand dollars and all you have to do is *show* two thousand dollars", "I'll give you a thousand dollars." Gage and Reese tied the money in a handkerchief and appellant and complainant took off to the bank to get complainant's two thousand dollars *to merely show* two thousand dollars. There was no evidence or circumstance manifested by Gage or appellant that they knew or recognized one another; but indicated that they were total strangers. Thereafter appellant and complainant returned from the bank with the two thousand dollars and Gage refused to pay off the bet previously lost on the grounds that there wasn't any money put up when the bet was made. Appellant and Gage asked that complainant put up two thousand dollars on a new bet and complainant replied "no, I'm not in on this",

whereupon appellant assured complainant that he *could not lose,* that appellant could win again, that complainant would get a thousand dollars for *showing* two thousand dollars. Complainant laid his two thousand dollars on the dash board and a new bet began, appellant showing complainant what winning card to pick. The sequence of the cards was from left to right on the lap of appellant as follows: black, black, red. Appellant showed complainant the winning red card on the extreme right and as complainant reached over to pick the red card his hand was knocked down either purposely or accidentally on the first card by appellant; the agreement being that the card first touched had to be turned up. Co-defendant Gage grabbed the money of complainant *before* the card was turned up and complainant got perturbed at Gage but appellant tried to quiet complainant down, saying "He can't read or write", "We'll get your money." Appellant got some envelopes and complainant was addressing the envelope to Gage's residence in Georgia in c/o Colonel Bob, but appellant jerked it out of complainant's hands and said "no you dern fool address it to yourself," whereupon complainant did so and appellant took the two thousand dollars and himself placed the money in the self addressed envelope. Gage insisted on placing the moneyed envelope in the mailbox. Appellant elbowed complainant back all the time; that is complainant tried on several occasions to get to Gage and relieve him of the money, but appellant prevented it. All three men proceeded to the mailbox in complainant's truck, complainant driving, appellant in the center, and co-defendant Gage to the right of appellant. Upon arriving at the mailbox, as Gage was getting out of the truck, he was seen by complainant shoving the moneyed envelope down in his pants underneath his shirt. Complainant got out to get to Gage whereupon he was stopped by appellant in that appellant kept pushing complainant back. Complainant told appellant "I think he swapped envelopes", appellant replied "He didn't swap no envelopes, just keep quiet", "you are go-

ing to mess things up". Appellant repeated this four or five times and appellant resisted complainant's efforts to get to Gage for about a minute to a minute and a half. Gage went to the mailbox and threw a letter into it and when complainant got around appellant, appellant got complainant by the arm and pulled him back and pushed him against a building. Gage caught a taxi and left. Complainant attempted to get to Gage throughout all the time that Gage was present. Complainant and appellant went to the mailbox to await the postman's pickup. Appellant made a phone call and told complainant he had to meet his wife. The waiting period to have the mailbox opened was about thirty minutes away, but appellant left to meet his wife. Upon the opening of the mailbox there appeared some six envelopes, none of which were the complainant's self addressed envelope, but there was a similar type and kind of envelope and a "hold" was placed upon this one. An hour and a half later complainant viewed this envelope at the main post office and it contained a bunch of envelopes folded up and no money. Complainant testified on cross-examination that appellant said if you put this money up you could not lose; that appellant again said "you are going to turn the card I show you, *you cannot lose*"; that complainant placed the money on the dashboard *for show.* On cross-examination complainant further testified that appellant assured him that appellant was going to win, that appellant would show complainant the right card to turn up and that complainant had nothing to lose. Complainant testified that his two thousand dollars was *for show only* and it wasn't part of the stakes in the bet. State's witness, O. J. Moisner, testified that he knew the appellant for about nine years, that he knew co-defendant, Gage, for about four years; that he knew Gage lived in San Antonio on or about August 22, 1963, and that he resided in this city for the four years he has known him, that appellant likewise lived in San Antonio for about nine years; that the witness had seen the appellant and Gage together prior to Au-

gust 22, 1963, on numerous occasions having conversations with one another; that the witness knew Reese for about nine years; that prior to August 22, 1963, had seen Gage and Reese together on numerous occasions, that Reese, appellant and Gage, all knew and were acquainted with each other; that the witness D. A. Hicks knows Gage and Reese and that on July 20, 1962, he saw the two of them in conversations one with the other. State's witness, Henry Woekle, testified he knew appellant and a man by the name of Reese on February 14, 1962, and that a card game was introduced to him by appellant. The type of card game was played with two black cards and one red card, with the red card as the winning card; that appellant dealt the cards, and as a result thereof witness lost two thousand dollars. The next state's witness, Oscar Pape, testified that he met appellant on September 9, 1963, and that he met Gage on the same date; that appellant introduced witness to a game of three cards; that one of the players professed to be illiterate; that the witness lost one thousand dollars; that appellant instructed witness to make a self addressed envelope but that he never received any letter or money. State's witness, Arthur M. Sandifer, testified that he knew Gage and has seen Gage write.

The prior conviction, alleged for the purpose of enhancing punishment was personally stipulated to by appellant and was dictated into the record by his counsel as follows: "Now comes the defendant, Ezell McDonald, in Cause No. S–63139, styled The State of Texas vs. Ezell McDonald, and stipulates in open court, outside the presence of the jury, that he is one and the same Ezell McDonald who was convicted on or about the 4th day of December, A.D., 1940, of a felony less than capital, to-wit: Burglary at night, said conviction occurring in the Criminal District Court of Nueces County, Texas; and which said Court then and there had jurisdiction of said cause, the same being numbered 6169 upon the docket of said Court,

entitled The State of Texas vs. Ezell McDonald, the said Ezell McDonald being the same person who was tried and convicted in said Cause No. 6169, and he, the said Ezell McDonald, was in said Cause No. 6169 then and there legally tried and convicted on said 4th day of December A.D., 1960, of the said offense of Burglary at night, and after the said felony conviction in said Cause No. 6169 and after the judgment thereon had become final against him. * * *"

▮ Appellant's able counsel urges in his brief that the verdict is insufficient to support the judgment and the sentence pronounced thereon for the reason that the jury did not assess the punishment in the case. The record reflects that the appellant and his counsel stipulated as to the prior conviction for a felony less than capital and by so doing alleviated the necessity for the state to submit proof of the prior conviction. In this state of the record, we have a case before us which comes under the terms of Art. 62 Vernon's Ann.P.C. which makes it unnecessary for the jury to assess the punishment as it is fixed by law. This procedure has been approved by this Court. See Salinas v. State, Tex. Cr.App., 365 S.W.2d 362 and Pitcock v. State, Tex.Cr.App., 367 S.W.2d 864.

▮ The next proposition urged by appellant is his contention that the evidence is insufficient to support the verdict. We overrule appellant's contention and find the evidence amply sufficient to support the verdict. Porter v. State, 4 S.W. 889, 67 Tex.Cr.R. 578; Gibson v. State, 85 Tex. Cr.R. 462, 214 S.W. 341; Barnett v. State, 119 Tex.Cr.R. 594, 43 S.W.2d 449; Vaughn v. State, 138 Tex.Cr.R. 62, 134 S.W.2d 290; Sherman v. State, 138 Tex.Cr.R. 302, 135 S.W.2d 484.

▮ Appellant also preserved an objection by an informal bill to the testimony of state's witness, Oscar Pape, the objection being that the witness, Pape, testified to an extraneous offense which transpired sub-

sequent to the date of this offense for which the appellant was being tried. The careful trial judge admitted this testimony under an appropriate instruction limiting its consideration by the jury to show intent and scheme. The offense alleged in the case at bar was allegedly committed on August 22, 1963, and the event testified to by witness Pape took place on September 9, 1963. The testimony reflects an almost identical transaction to the one in the case at bar. The early case of Hennessey v. State, 23 Tex.App. 340, 5 S.W. 215, supports the action of the trial court in admitting this testimony. Also see Campbell v. State, 163 Tex.Cr.R. 545, 294 S.W.2d 125; Roe v. United States, 5 Cir., 316 F.2d 617 (1963); Jones v. State, Tex.Cr.App., 376 S.W.2d 842 and 22 Tex.Jur.2d 310, Sec. 201.

The remaining informal bills have been carefully examined and reflect no reversible error.

The judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

Appellant seriously challenges our consideration of a statement of facts on stipulations filed in this Court on June 18, which was after the expiration of 90 days from the giving of notice of appeal. The original statement of facts contains the announcement that "the following evidence was adduced and proceedings had in connection therewith" and concludes with the certificate, "The above and foregoing, having been examined and found correct * * *" as signed by the trial court was filed in this Court on May 14. The statement of facts filed on June 18, prior to the submission of this cause originally, contains the announcement that "the following stipulation was entered into and proceedings had in connection therewith;" concludes "thereupon, jury panel brought into court-

room for voir dire examination" and is approved by the trial court.

From this it is apparent that the original statement of facts did not contain all of that which occurred at appellant's trial and the trial court cured this omission by sending this Court a statement of facts of that which occurred, but was omitted from the original statement of facts.

Appellant is in no position to challenge our consideration of the second statement of facts because it contains a stipulation entered into by his counsel at the trial and in which he personally joined. In argument appellant's counsel on appeal does not challenge the validity of the stipulation, but he merely questions our consideration thereof. The majority have concluded that, though the Legislature has not by the amendment of Article 759a V.A. C.C.P. placed a time limit on the approval of statements of facts by the trial court, in order to effectively terminate litigation before this Court we will consider only those statements of facts which are filed with the clerk of the trial court, approved by the trial court and filed in this Court prior to original submission on our docket. See Selvidge v. State, 171 Tex.Cr.R. 140, 345 S.W.2d 523; Cunningham v. State, 172 Tex.Cr.R. 3, 353 S.W.2d 37; Clayton v. State, 172 Tex.Cr.R. 595, 361 S.W.2d 385; Doby v. State, Tex.Cr.App., 363 S.W.2d 286; Hill v. State, Tex.Cr.App., 375 S.W.2d 306; and Ex Parte Seffens, Tex.Cr.App., 376 S.W.2d 348.

Remaining convinced that we properly decided this case originally, appellant's motion for rehearing is overruled.

WOODLEY, Presiding Judge (concurring).

The statement of facts, in question and answer form, agreed by counsel to comprise a true and correct statement of facts and examined, approved and ordered filed as the statement of facts by the trial judge, reflects that after voir dire examination of the jury panel on March 20 (which ex-

amination is not set out) the jury was sworn and impaneled on March 21, 1964 and the court instructed counsel for the state to read the first count of the indictment. The indictment was read; the defendant pleaded not guilty and the witnesses were placed under the rule.

The evidence introduced before the jury is shown in said statement of facts. None of such evidence relates to the prior conviction alleged in the indictment for enhancement of punishment purposes. (It has been held that a prior conviction alleged for enhancement of punishment under Art. 62 or 63 P.C. is not an element of the primary offense.)

The court's charge made no mention of and required no finding as to such prior conviction.

This is explained and accounted for by the subsequently filed supplemental transcript and statement of facts showing that prior to the voir dire examination of the jury panel the appellant was permitted to stipulate in open court, outside the presence of the jury, as to such prior conviction and showing that the trial court received the stipulation and directed: "the last count of the indictment is no longer an issue of fact and will not be alluded to in any way by the state in the presence of the jury, unless the defendant should happen to take the stand in his own behalf, in which event it would be available for impeachment purposes only. But other than that, it will not be read to the jury or mentioned in the presence of the jury."

The trial judge should be commended for allowing the appellant to remove any possible prejudice by stipulations in advance of the trial which made it unnecessary that the jury which was to pass upon his guilt or innocence be informed that he was an ex-convict.

It is the view of the writer that the stipulation entered into before the court at the instance of counsel for appellant is properly before this court in the belatedly filed supplemental transcript and statement of facts approved by the trial judge.

I do not agree with appellant's contention that under Art. 759a V.A.C.C.P., as amended, only the appellant could file such a statement of facts, nor do I agree that the time for the court's approval of such a supplemental statement of facts ends with the submission of the appeal.

I concur in the overruling of the appellant's motion for rehearing.