### M. N. WEST V. THE STATE.

No. 21117. Delivered October 23, 1940.
Rehearing Denied December 18, 1940.

The opinion states the case.

*Theodore Andress, Charles Owen,* and *Fryer & Milstead,* all of El Paso, for appellant.

*Roy D. Jackson,* District Attorney, and *Harold S. Long,* Assistant District Attorney, both of El Paso, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is swindling. The punishment assessed is confinement in the state penitentiary for a term of five years.

The appellant and W. F. Carr were jointly indicted for having swindled the American Smelting & Refining Company of El Paso, Texas, out of $5,857.19. Appellant asked for and obtained a severance and he alone was placed on trial.

It appears from the record that appellant and Carr claimed to be engaged in mining gold and silver in the State of New Mexico in the year 1938. Sometime in the summer of said year they made arrangements with the American Smelting & Refining Company to ship to it ore in carload lots, which was to be paid for by the company at the prevailing market price, which was $35.00 per ounce for gold and sixty-five cents per ounce for silver. A sample was taken out of the ore as it was being run through a crusher and pulverized. The value of the mineral per

ton was determined by an assay thereof, the richer the sample the greater value per ton. During the months of October, November and December, 1938, and January and February, 1939, appellant and Carr shipped several car-loads of rock and dirt from dumps of abandoned mines. These dumps, according to the testimony, had been discarded by the miners many years ago because they did not contain sufficient minerals to justify the paying of shipping charges. Appellant and Carr shipped this discarded ore to the American Smelting & Refining Company at El Paso, Texas; and when it was run through a crusher and a sample was being taken, they were seen loitering about the place in close proximity to the sample bucket. The samples taken from the following cars disclosed the percentage of mineral per ton to-wit: S. P. car No. 93,257 contained .47 of an ounce of gold, 2.8 copper and 120.7 ounces of silver. S. P. car No. 46,840 contained 1.24 ounce of gold, 28.8 ounces of silver. S. P. car No. 46,213 contained .82 ounce of gold, 21.5 ounces of silver. S. P. car No. 44,339 contained .78 ounce of gold and 17.2 ounces of silver. S. P. car No. 91,763 contained .54 ounce of gold and 46.3 ounces of silver per ton. On December 10th, appellant and Carr shipped one carload from the same dump which, according to the analysis of a sample thereof, was worthless and did not contain sufficient mineral to pay the shipping charges. On December 19, 1938, they shipped another car from the same dump which, according to the analysis thereof, disclosed a high percentage of metal content, and they received for said carload (which was the one in question) the sum of $5,857.19.

Refugio Hernandez, an employee of the company whose duty it was to convey the sample from the crusher to the assay room, testified that in the early part of 1939, the appellant and Carr came to his home at night and told him that they suspected they were being watched by some of the employees of the American Smelting & Refining Company and offered him $35.00 per car and agreed to furnish him pulverized gold and silver which he was to mix and mingle with the sample before it was taken to the assay room; that at first he declined their proposition but finally accepted it. They then paid him $70.00 in advance. This testimony indicates that they had been padding and bolstering the samples themselves but had become fearful that they might be apprehended and therefore sought the services of Hernandez.

Appellant took the witness-stand and testified in his own behalf. He protested his innocence and want of fraudulent intent. On cross-examination he admitted, however, that they

shipped three carloads of ore from the old abandoned dump at the Atwood Mine which netted them good returns; that when he made a sworn report to the Treasury Department at Washington, D. C., relative to his mining business, he stated in said report that the ore was newly mined and came from the Last Chance Mine in the Gold Hill District of New Mexico. He said they next shipped six cars from the Chapo Mine at Hachita, New Mexico; that during the months of November and December, 1938, and January, 1939, these six cars were taken from an old abandoned dump. However, when he made his report to the Treasury Department at Washington, D. C., he reported that the mineral was newly mined ore, all of which was shown to be untrue. He denied that he mixed and mingled any pulverized gold and silver in the sample or caused it to be done before it was taken to the assay room. He also denied having bribed Hernandez or paid him any money or offered to do so for padding and bolstering the samples. His employees who loaded the ore to be shipped all testified that all the ore shipped from the Hachita Mine came from an old dump and that none of it was newly mined. The foregoing constitutes a brief statement of the facts

Appellant's first complaint is of the action of the trial court in declining to sustain his motion to quash the indictment on the ground that it was vague, indefinite and uncertain and did not advise him to whom the false and fraudulent pretenses and representations were made. It is charged in the indictment that on or about the 31st day of December, 1938, W. F. Carr and M. N. West, by means of false pretenses and devices and fraudulent representations made by them to the American Smelting & Refining Company, a corporation, did induce the said American Smelting & Refining Company, to part with the title and possession of the sum of $5,857.19, the same being the corporeal personal property of and belonging to the American Smelting & Refining Company, and to deliver said sum of money to the said W. F. Carr and M. N. West; and the said W .F. Carr and M. N. West did acquire said money from the American Smelting & Refining Company with the intent then and there to deprive the said American Smelting & Refining Company of the value of the same and to appropriate it to the use and benefit of them the said W. F. Carr and M. N. West; said false pretenses, devices and fraudulent representations so made being as follows, to-wit:

"That prior to December 31st, 1938, the said W. F. Carr and M. N. West had made arrangements with the American

Smelting and Refining Company to ship cars of mineral bearing ore to said American Smelting and Refining Company at El Paso, Texas, which ore was to be bought by said American Smelting and Refining Company, the price to be determined by the current prices of the minerals contained and the richness of the ore, that is, the number of ounces per ton of such minerals as were found in commercial quantities in said ore; the mineral content of such ore to be determined by assays made of representative samples of each shipment of ore so to be purchased; that on or about December 31st, 1938 the said W. F. Carr and M. N. West shipped to said American Smelting and Refining Company at El Paso, Texas, a carload of ore and tendered same for sale to said company; that there was taken from said car a representative sample of ore to be assayed to determine the value thereof and the said W. F. Carr and M. N. West did then and there willfully, knowingly and fraudulently place and cause to be placed in said sample before the same was assayed, a quantity of high grade ore containing a high percentage of gold and silver thereby greatly increasing the percentage of gold and silver in said sample and which sample when assayed showed a higher percentage of gold and silver than the car of ore of which it purported to be a representative sample actually contained; that by said false pretenses and devices and fraudulent representations so made by the said W. F. Carr and M. N. West to the American Smelting and Refining Company they thereby falsely and fraudulently represented to the American Smelting and Refining Company that said entire car of ore was of a richness and contained a percentage of gold and silver equal to that of said sample so assayed and was of the value as shown by said assay, to-wit: the sum of Five Thousand, Eight Hundred Fifty-seven Dollars and nineteen cents after deducting the costs of shipping and smelting, and did by such false pretenses and devices and fraudulent representations induce the said American Smelting and Refining Company to pay to the said W. F. Carr and M. N. West the said sum of Five Thousand, Eight Hundred Fifty-seven Dollars and Nineteen cents for such ore, and the said American Smelting and Refining Company did then and there rely on said false pretenses and devices and fraudulent representations of said W. F. Carr and M. N. West that all of said car of ore was of the richness and contained the percentage of gold and silver as was shown in said assay and did pay to them the said sum of Five Thousand, Eight Hundred Fifty-seven Dollars and Nineteen cents believing the said representations to be true and that said ore was of said value; when in truth and in fact the said ore did not contain

a high percentage of gold and silver and was not rich in said minerals and did not contain the percentage of gold and silver as was shown in said assay and was not of the value as represented but was worth Two Hundred Fifty Dollars and the said W. F. Carr and M. N. West then and there well knew that said pretenses, devices and representations were false, against the peace and dignity of the State."

Appellant contends that since the American Smelting & Refining Company is alleged to be a corporation, neither he nor Carr or either of them could have made any false and fraudulent representations to it, but that if any were made they must have been made to some agent or officer of the corporation by and through whom it acted; that therefore the agent or officer of the corporation to whom the false representations were made should have been named in the indictment in order to give him notice of what he would be required to meet upon the trial of the case. In support of his contention he cites us to the case of Pruitt v. State, 202 S. W. 81, (85 Texas Cr. R. 148). If the alleged fraudulent representations had been made verbally then there might be some merit in the appellant's contention, and the rule announced by this Court in the case of Pruitt v. State, supra, might be applicable; but in the instant case it was specifically charged that appellant and Carr padded and bolstered the samples of the alleged ore by placing a high grade pulverized metal of gold and silver into the sample, or caused it to be done, which was a pretense, device and act and not a verbal representation. It was definitely charged in the indictment that W. F. Carr and M. N. West wilfully and fraudulently placed, or caused to be placed, in the sample a quantity of high grade ore of gold and silver, thereby increasing the percentage of gold and silver in said sample which, when assayed, showed a higher percentage of gold and silver per ton than the car of ore of which it was purported to be a representative sample actually contained. We deem this sufficient to put the appellant upon notice of what he would be required to meet upon the trial; that is, that the fraudulent pretenses and devices resorted to by the appellant and Carr, as charged in the indictment, were acts committed for the purpose of misleading the assayist of the corporation by and through whom they expected to swindle it out of the amount of money charged in the indictment. The assayist, whoever he was, had certain well-defined duties to perform under his employment with the corporation. An assayist is a person who, as the name implies, makes an examination and analysis of metals, etc., just as much so, as the name cashier

implies that he is a person who pays and receives money for a corporation or institution. But a cashier's duty under his employment would not carry with it the duties of an assayist, nor would the duties of an assayist carry with it the duties of a cashier. Hence the false pretenses and devices resorted to and employed by the appellant and Carr to defraud the American Smelting & Refining Company was by and through an innocent agent, namely, the assayist. Without reference to what his name was, they knew that the padding and bolstering of the sample with a high grade metal would deceive and mislead the assayist; that the result of the analysis by him of the sample would be reported to the corporation which would act upon the report and thus act to its injury. This was in contemplation of the appellant and Carr when they conceived the scheme which they carried out, as reflected by the record. Since no verbal representations were made by the appellant and Carr we believe that the rule announced by this Court in the case of Cochrain v. State, 93 Texas Cr. R. 483, is applicable here. Hence we overrule the appellant's contention.

Bills of Exception Nos. 1 to 6 inclusive involve the same legal questions and will be treated and considered by us together. In said bills appellant complains of the admission in evidence of the shipment of a certain number of carloads of rock and dirt by the appellant and Carr to the American Smelting & Refining Company at El Paso, Texas, during the months of September and October, 1938, from an old dump at or near the Atwood Mine and to all evidence relative to the shipment by them of any car of ore to the American Smelting & Refining Company at El Paso, Texas, prior and subsequent to the time of the alleged offense as charged in the indictment. It appears from the record that the purpose of the State was to show that the appellant and Carr had resorted to the same means and method and entertained the same intent to swindle the corporation out of some money by shipping carloads of rock and dirt from old dumps which did not contain ore in sufficient quantities to yield the amount of gold and silver as disclosed by an assay of a representative sample thereof. Appellant objected to said testimony upon the following grounds: first, that they were extraneous offenses and did not tend to connect him with the offense charged; and second, that it was no part of the res gestae and does not tend to show intent, identity or system. We are not in accord with the appellant's contention. However, the appellant and Carr had shipped rock and dirt to the corporation from an old dump which had been discarded by miners

for approximately twenty years, a representative sample of which disclosed a high content of precious metals, from which an inference arises that it was padded and bolstered and tends to show scienter and fraudulent intent. Moreover, the fact that they abandoned the Atwood Mine dump although the shipments from it had netted them valuable returns and moved to the dump at the Hanover Mine and shipped from there would, in our opinion, disclose poor business capacity on their part if it actually contained the amount of metal as disclosed by a representative sample thereof. Why abandon a dump which yielded them such marvelous wealth? In each instance they resorted to the same means and employed the same method to perpetrate a fraud upon the corporation. It seems to us that each shipment was but a part and parcel of the entire scheme by which they fleeced the corporation. By "system," as we understand the term, is meant the use of the same means, the same manner and method of accomplishing a previously planned objective. It tended to show that the samples were padded and bolstered, as contended for by the State, from which an inference of the fraudulent intent arises. If appellant did not "salt" the sample and did not cause it to be done, then no offense was committed.

Branch, in his Ann. Texas P. C., p. 98, Sec. 166, states the rule as follows: "When an extraneous crime or other transaction is a part of the *res gestae*, or tends to show intent when intent is an issue, or tends to connect defendant with the offense for which he is on trial, proof of same is admissible."

It occurs to us that here the question of intent, identity and motive were issues in the case and therefore the evidence was admissible.

The appellant's contention that the State was permitted to prove over his objection that he and Carr stole two carloads of rock and dirt from the old dump at the Atwood Mine is without merit. The record shows that Mr. Augustine, the owner of the dump, gave them permission to take some of it for experimental purposes without designating the amount. After they had taken two carloads they paid him $20.00 for it. Hence there was no evidence of any theft having been committed by them. Consequently, we overrule his contention as being without merit.

What we have heretofore said in disposing of Bill of Exception Nos. 1 and 2 disposes of all the remaining bills wherein appellant complains of the introduction of similar testimony which he contends shows extraneous offenses.

The introduction in evidence of the reports made by the appellant to the Treasury Department at Washington, D. C., which were false, were, in our opinion, admissible as tending to show scienter and fraudulent intent on the part of the appellant.

By Bill of Exception No. 7 appellant complains of the following statement made by the court in the presense and hearing of the jury: "Gentlemen, I believe that I can explain that matter, but I will not do so in the presence of the jury. If I did, I would get in trouble, because if I said that the sun was shining, it would cause trouble."

It appears that upon the trial of the case where was present a witness whose name did not appear on the list of the witnesses handed to the appellant at his request by the District Attorney before the beginning of the trial. When this witness, whose name did not appear upon the list, was called to the witness-stand to testify, the appellant objected thereto, and the court overruled the objection, making the remark above quoted. This was not any rebuke of counsel for the defendant as now claimed by him. It was merely a statement by the court to counsel that the matter was capable of explanation but he would not do so at that time in the presence of the jury but would do so later in order that there would be no question of his making any improper remark in the presence of the jury. No objection seems to have been made to the testimony given by the witness and no bill is brought forward complaining of the testimony of said witness. The court's remark was nothing more than informing counsel for the appellant that he could explain the reason for the failure of the name of the witness to appear on the list handed to appellant's counsel by the District Attorney. In support of what we have stated here, we quote from the opinion of the court in the case of Dailey v. State, 55 S. W. 821, as follows: "During the trial, counsel for both sides 'were making objections and wrangling over testimony to such an extent that the whole progress of the court was interfered with; at which point defendant's counsel, M. Carter, objected to a question asked witness. The court overruled the objection, and directed the county attorney to proceed; when said Carter again objected, stating that he was trying to prove "so and so." The court then said: "You will be seated, Mr. Carter. You will not let us prove anything." ' Appellant excepted because it was calculated to influence the jury. The court certainly had the right to keep order during the trial and prevent unnecessary wranglings and objections, and to require attorneys to be seated. If this is the portion of the remarks to which this objection

relates, there certainly can be no merit in it. The whole statement is objected to without pointing out which portion of it is objectionable. But, if the remainder of the sentence is objected to, we believe the court should not have used the remark, but it was not a comment upon the testimony, and was hardly calculated to influence the jury against appellant."

We think the case of Hood v. State, 107 S. W. 848, (52 Texas Cr. R. 524) is very much in point, and a reference to it without quoting from the opinion is deemed sufficient. Just how appellant construes the statement complained of as a reprimand of his counsel is not clear to us. We therefore overrule his contention.

By Bill of Exception No. 9 appellant complains of the court's instruction on the law of principals. We think that the evidence in this case is clearly such as to call for an instruction on the law of principals. The charge of the court is in accord with the charge on principals approved by this Court in the case of McDonald v. State, 35 S. W. 286, (34 Texas Cr. R. 556) and subsequently approved by this Court in the case of Middleton v. State, 217 S. W. 1046 (86 Texas Cr. R. 307).

By Bill of Exception No. 10 appellant complains of the action of the trial court in declining to instruct the jury relative to the law of alibi. The appellant's contention here, as in the trial court, is that if the offense was committed as charged in the indictment, he was not present and did nothing in furtherance of the original design, if any, at the time of the commission of the offense and therefore would not come within the definition of a principal. Article 65, P. C., defines "principals" as follows: "All persons are principals who are guilty of acting together in the commission of an offense."

Article 66, P. C., having reference to the same subject, reads as follows: "When an offense is actually committed by one or more persons, but others are present, and knowing the unlawful intent, aid by acts or encourage by words or gestures, those actually engaged in the commission of the unlawful act, or who, not being actually present, keep watch so as to prevent the interruption of those engaged in committing the offense, such persons so aiding, encouraging or keeping watch are principal offenders."

Art. 67, P. C., reads thus: "All persons who shall engage in procuring aid, arms or means of any kind to assist in the commission of an offense, while others are executing the un-

lawful act, and all persons who endeavor at the time of the commission of the offense to secure the safety or concealment of the offenders, are principals."

Art. 69, P. C., reads as follows: "Any person who advises or agrees to the commission of an offense and who is present when the same is committed is a principal whether he aid or not in the illegal act."

It is the appellant's contention that the testimony does not bring him within the definition of a principal, as defined by statute, because the proof shows that the car of ore in question arrived at the plant of the American Smelting & Refining Company on the 22nd day of December, 1938; that an analysis of the sample was not made until after Christmas; that appellant was not in El Paso, Texas, at the time, having left there several days before Christmas and consequently was not present when the offense was committed, if it was committed. If, however, the evidence brings appellant within the definition of principals, then he would not be entitled to an instruction relative to the law of alibi.

Now, let us take the testimony, that is, all the facts and circumstances adduced upon the trial and see if it brings him within the rule of principals. The appellant and Carr shipped several cars of ore from an old dump, and when this ore was being run through a crusher, where a sample was being taken, they were seen loitering about the place while the crusher was in operation. This ore, or rather rock and dirt, from an old dump which they shipped, disclosed, according to an analysis by the assayist, quite a quantity of gold and silver, the shipping of which, if it really, actually and truly contained that quantity of the precious metal, would soon have enriched the appellant and his co-conspirator Carr. However, for some reason undisclosed by the record, they moved from that dump to another old dump at an old mine and shipped from there. One of the cars shipped from said dump disclosed that it contained practically no minerals of any value. At least the returns thereof were not sufficient to pay the freight charges. A few days later they shipped another car from the same dump, which is the car in question, and it showed such a high content of gold and silver that the corporation, according to the analysis by the assayist, paid them $5,857.19. Just why this difference in the two shipments is not explained or attempted to be explained. The testimony shows that the appellant shipped this particular car and that he received the check that was given to him in

payment for the car; that he cashed it and received the money. Conceding for the sake of argument that he was not present at the very moment that the sample of the car was padded and bolstered, yet, when he shipped that load of rock and dirt from that old dump which he claimed was ore, he laid the predicate for the sample to be padded by Carr or some other co-conspirator. If he had not shipped the car of dirt down there, his co-conspirator could not have accomplished the fraud, because he would not have had anything with which he might mingle the pulverized gold and silver in his pocket or in his bag. Consequently, he did something in furtherance of the common design of both. Then, when he received the check, endorsed it and obtained the money, he committed another overt act. If he had not received the check, had not endorsed it, and had not cashed it, no injury would have resulted even though the car had been shipped and the sample padded as aforesaid.

In the Bass case, 127 S. W. 1020, (1025) this Court said: "If the party charged, though not actually present, is engaged in or is doing something in the chain of causation which leads up to the offense and is a necessary part of its accomplishment, he is a principal, though he may not be at the immediate time actually present."

So, in this case, the appellant who shipped the car of ore in question to the American Smelting & Refining Company at El Paso, Texas, was thereby laying the ground work for the sample to be padded and bolstered. However, if nothing further had been done in furtherance of the original scheme and design of the appellant and his alleged co-conspirator, no swindling would have been perpetrated, nobody would have been injured and the company would not have lost anything or parted with anything of value. Consequently, the offense was not consummated until the appellant went to El Paso, received the check, endorsed it and obtained the amount of money therein specified. Then, and not until then, was the offense complete. Hence, we think that the appellant comes within the definition of a principal as defined by statute and was not entitled to a charge on alibi. See Coy v. State, 100 S. W. (2d) 1016; McInnis v. State, 122 Texas Cr. R. 128, (54 S. W. (2d) 96, 98), and cases there cited.

We think that the case of Robertson v. State, 132 S. W. (2d) 276, although not directly in point, by analogy supports the views expressed in this opinion.

Appellant urged quite a number of objections to the court's

charge and requested a number of special instructions. We have examined the same in connection with the court's charge and reached the conclusion that none present any reversible error inasmuch as the court's instruction to the jury on the law applicable to the facts of this case is a fair, adequate and concise charge.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

Appellant reiterates his contention that bill of exception No. 3 reflects reversible error, his position being that it is shown in the bill that State improperly elicted testimony from the witness J. L. Augustine tending to show that appellant had been guilty of stealing a quantity of ore from said witness.

According to the testimony of Mr. Augustine, as shown in the bill of exception, appellant asked his permission to take some ore from a dump at a mine near Lordsburg, New Mexico. The witness understood that a small quantity of such ore was to be taken by appellant for experimental purposes, and that the experiments were to be made in the State of Arizona. The quantity of ore to be taken was not designated and the witness had no intention of receiving any remuneration in the transaction. He did not give appellant permission to take two carloads, and if he had known that a large quantity of the ore was to be taken he would have expected to have been paid for it. After he and appellant had their conversation relative to the taking of the ore appellant met him and paid him twenty dollars. He did not know at the time that appellant had taken a carload of ore and that he was going to ship a second car from the mine. If we understand the testimony of the witness, it was to the further effect that he would not have given appellant permission to take a large quantity of the ore in the absence of an agreement as to the price to be paid. Other than the twenty dollars mentioned, he received nothing from appellant to compensate him for the two carloads of ore. The bill of exception shows that witnesses introduced upon the trial testified that at least two carloads of ore were taken from Mr. Augustine's dump near Lordsburg, New Mexico.

We are unable to reach the conclusion that proof of the manner in which the ore was obtained from Mr. Augustine was inadmissible on the ground that it tended to show appellant acted dishonestly in the transaction. It has been observed that appellant was jointly indicted with W. F. Carr for swindling the American Smelting and Refining Company of El Paso County, Texas, on or about December 31, 1938. The charge grew out of the shipment to the smelting company of a number of cars of ore represented by the appellant and Carr to be rich in minerals. It was the theory of the State, given support in the testimony, that the purportedly rich ore was, in fact, of little or no value, and that its apparent value was obtained by the process known as "salting" the sample. The State's evidence involved appellant and Carr in the shipment to the smelting company of several cars of ore of little or no value. Two of these cars were from the mine of the witness Augustine near Lordsburg, New Mexico. According to the testimony of the State, with the exception of one car, the samples taken from the several cars delivered to the assayist of the smelting company had been "salted." All of the ore had little value. The samples of the cars shipped from Lordsburg had been "salted." The fraud that was alleged to have been practiced resulted in great loss to the smelting company.

While the two cars of ore which had come from the mine of Augustine in Lordsburg were not charged upon in the indictment, proof that the smelting company had been swindled by the appellant and Carr in the transaction in which such ore was purchased by the company was properly admitted by the court as a part and parcel of the entire scheme which was allegedly used to defraud the company. As said in the original opinion, such proof tended to show system, and was calculated to aid the jury in drawing the inference that the intent of the appellant was fraudulent in the transaction of December 31, 1938, which is reflected in the indictment set forth in the original opinion. The opinion is expressed that it was proper for the State to prove that appellant and Carr had obtained two carloads of ore from Mr. Augustine's mine, and that such ore had little or no value; and, again, that such ore was sold to the smelting company after a "salted" sample prepared or caused to be prepared by appellant and Carr—which indicated that the ore was of high value—was delivered to the assayist of the company. The fact that appellant might have acted dishonestly in obtaining the ore from Augustine afforded no reason for excluding any part of the testimony relating to the entire transac-

tion. Such evidence constituted a detail of the whole criminal scheme. See Claxton v. State, 4 S. W. (2d) 542. It tended to establish a fraudulent intent as well as system. We quote from 18 Texas Jur., 59, as follows:

"The rule against the admission of evidence of other crimes does not apply where such evidence logically tends to prove defendant's guilt of the crime charged. Stated in another way, evidence which is pertinent and tends to prove the crime alleged is not rendered inadmissible because it also tends to prove the commission of other crimes. But in order that a collateral crime may be relevant as evidence it must be connected with the crime under investigation as part of a general and composite transaction.

"While it is impossible to state the cases in which evidence of extraneous crimes is admissible with categorical precision, generally speaking such evidence is admissible when it tends to establish identity, intent or guilty knowledge, motive, or system, or when other crimes are part of the res gestae."

Appellant again insists that the trial court committed error in failing to submit an instruction covering the law of alibi. We are unable to agree with this contention. It was the State's theory, given support in the testimony, that appellant was a principal although he might not have been present in El Paso at the place where the swindle charged upon in the indictment was perpetrated. According to appellant's testimony, all of his transactions with the smelting company were free of fraud. If appellant was guilty as a principal, notwithstanding he was absent from El Paso upon the occasion in question, a charge on alibi was not called for. See Walker v. State, 181 S. W. 191. The defense of alibi arises when there is evidence that the accused is at a point where he could not have been guilty of participating in the offense. Funk v. State, 208 S. W. 509.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.