MANUEL A. VIGIL V. THE STATE.

No. 23012. Delivered January 24, 1945.

The opinion states the case.

*Lytton R. Taylor,* of El Paso, for appellant.

*Roy D. Jackson,* Dist. Atty., and *Gill L. Newsom,* Asst. Dist. Atty., both of El Paso, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the offense of embezzlement of property over the value of $50.00, and was assessed a penalty of two years in the penitentiary.

The facts show that appellant was an agent of a Coca Cola bottling works at El Paso, Texas, and as such he drove a truck and acted as a salesman of the employer company's products. Upon leaving the place of business of his employer he was checked out by an employee called a "checker," and charged with the amount of merchandise on his truck at the rate of $1.30 per case of coca cola. While making his rounds it was his duty to pick up all cases of empty bottles, as well as cartons thereof, he to receive credit at the time he was checked in at the rate of 50 cents for each case of empty bottles, and 12 cents for each carton of six empty bottles. Upon his return from his trip a checker counted the cases of full bottles, if any, the cases of empty bottles and cartons, and then made a record thereof on a recording machine, which record had a carbon duplicate, and the driver who signed the same tore off the top sheet and took same to the bookkeeper, and made a settlement of his collections therefrom.

On the date alleged in the indictment appellant left his place of employment with a truck load of 170 cases of coca cola, for which he would be charged upon the company's books the sum of $1.30 per case. Upon his return the checker found him in possession of 61 empty coca cola cases, for which he was to be credited 50 cents each, and 90 cartons, for which he was to be credited 12 cents each. This check seems to have been verified by appellant. The checker then went to the recording machine and made these entries upon a slip, beneath which was

the carbon. Appellant then signed the slip, tore off the top original and took the same to the cashier and made his settlement of collections thereon. While signing this slip appellant was observed by the superintendent of the company to make two marks on said slip, and then sign his name. Upon presentation of this slip to the bookkeeper, instead of the same reading 61 empty cases it read 161 empty cases, thus increasing the amount of credit due appellant $50.00, or 50 cents for 100 empty cases; the figures of 90 empty cartons was also changed to read 190 empty cartons, thus increasing the credit due appellant $12.00, or 12 cents per 100 cartons.

In appellant's testimony he vigorously denies placing these digits on this machine record more than once, but finally he said: "As to how I checked in, yes, I put the one in front of the 61, but I did not put the one in front of the 90, I am positive of that."

Appellant also signed a written confession, which he testified was true. We quote therefrom:

"My name is Manuel Vigil, and I am employed by the Magnolia Coca Cola Bottling Co. in El Paso as a truck driver and delivery man. When we leave the plant with a load of Coca Cola we are charged $1.30 for each case or crate containing 24 bottles. When we check in we are given credit of fifty cents for each empty crate we bring in. This morning I had loaded on my truck 170 cases of Coca Cola. When I reported in I had about 70 empties. I made my report to Mr. Amacher. Who checked me. I signed the report at the cash register and Mr. Amacher took off. I then changed the report on the cash register to read 170 empty cases. These cases of empties are valued at fifty cents each. I kept the extra money of $50.00 in my pocket as a credit for the 100 cases I was supposed to have turned in, but which I did not turn in, out of the money I had collected and which belonged to the Magnolia Coca Cola Bottling Co. in El Paso, El Paso County, Texas. This all happened in El Paso County, Texas. (This is the first time I have ever taken any money from the Magnolia Co. that did not belong to me.)"

Appellant's defense upon his trial was that he had sold some $50.00 worth of merchandise to a local merchant, who had not paid him, and from whom he later collected the money, but that while making the above statement he was told by a trusty at the jail not to talk any more, so he did not put such a statement in his confession. That he had never stolen anything from the company, and never stole this $62.00 or any other amount.

from this company; and he presented a check at the trial for $50.00 which he contended would have squared his account, and which he claimed to have received from such merchant.

Bills of exceptions Nos. 1 and 2 relates to the introduction of various other transactions within two months prior to the date alleged in the indictment, showing transactions similar in their nature to the one thus alleged. Bill No. 1 relates to the court's charge, and limiting the consideration by the jury of such other transactions "solely for the purpose of showing the intent or system of the defendant as to the particular act charged in the indictment, if it does do so, and for no other purpose. If you consider such testimony at all, you will consider it solely for the purpose for which it was admitted and no other, for the defendant cannot be convicted in this case of any offense save and except the one specifically set out in the indictment, to-wit: the fraudulent conversion, embezzlement or misapplication of the money charged in the indictment, if at all." We think this charge correctly applied the law to such facts, and properly limited the consideration of such other offenses.

Bill No. 2 complains of the introduction of thirty items during a period of two months prior to the date alleged in the indictment wherein the slip presented to the bookkeeper differed from the one checked in by the checker on appellant's account. In practically each one of such slips the same method was followed as is shown herein. For instance, on May 23, 1944, it is shown that appellant turned in 51 empty cartons, but his settling slip showed 151 empty cartons. Suffice it to say that in each one of the thirty instances thus introduced, the original figure on the recording machine was not disturbed, but another figure was placed either before or behind such figure, resulting each time in appellant receiving a larger credit than that to which he was entitled. The instances offered by the State in varied amounts up to $50.00 total the sum of $665.30, all of which sums being shown to have been gotten in the same manner, that is by the placing of a figure before or after the true figure on the recording machine, and such altered slip being used in the making of the settlement. We think this showed a system practiced upon the part of appellant as well as his intent, he denying any intent to embezzle any funds from his employer Company. See 18 Tex. Jur., p. 59, et seq, Secs. 33-34, and we quote from Sec. 35:

"Evidence of the commission of similar offenses, although separate and isolated from the crime charged, is admissible for the purpose of showing guilty knowledge or intent, whenever the

existence of such knowledge or intent is material, and either disputed or doubtful. Indeed the only method of showing a present intent is often to be found in proof of a like intent previously entertained. Commission of other crimes may be shown under this rule only when the intent accompanying the act is equivocal, or where the intent otherwise becomes an issue in the trial,—as where it is claimed that the act in question was free from a criminal intent, or was the result of mistake, accident or inadvertence."

We think the admission of such other offenses evidence a system, as well as are usable by the jury in establishing appellant's intent in thus altering or changing the slip on the recording machine.

We think the trial court did not abuse his discretion in allowing the State to reopen its case prior to the time the court had read his charge to the jury, and this disposes of bill No. 3.

Bill No. 4 complains because of the argument of the State's attorney relative to the difference between reputation and character wherein the State's attorney cited a matter of common knowledge in which Benedict Arnold, who enjoyed the confidence of his commander-in-chief, yet he betrayed his country, he doubtless bearing a good reputation, but being deficient in character; and again citing the case of Judas Iscariot who bore a good reputation as one of the followers of the Christ, yet had not the character to withstand the offer of thirty pieces of silver for the betrayal of his Master. It is noted by us that two witnesses testified that appellant's reputation was good, but for what particular trait is not shown. While these illustrations are doubtless extreme, we can find no disagreement with the trite saying that reputation is what people think or say about one, and character is what one is. We think that the illustrations offered by the State's attorney were matters of common knowledge surely to every man on the jury, and were merely used as illustrations by such attorney. Nowhere was he likening or comparing appellant to these men of history, but was using such illustrations as an example of the difference between character and reputation. We see no evidence of the inflammatory nature of such references reflected in the lowest penalty awarded appellant by a merciful jury.

We see no error in this trial. The judgment will therefore be affirmed.