ALTA CAMPBELL V. STATE

No. 28,208. May 9, 1956.
Appellant's Motion for Rehearing Overruled
October 3, 1956.

Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) October 31, 1956.

*McCarthy, Rose & Haynes,* by *George S. McCarthy,* of counsel, Amarillo, for appellant.

*Gib Howard,* District Attorney, *Wayne Bagley,* Assistant District Attorney, Amarillo, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

Appellant was convicted under Art. 95, V.A.P.C., of the offense of misapplication of county funds and assessed punishment at two years' confinement in the penitentiary.

The conviction is under the Sixteenth Count of the indictment, which charged that on or about the 31st day of August, 1953, the appellant did fraudulently take, misapply and convert to her own use and benefit, One Hundred Dollars in lawful current money of the United States, being then and there the property of Potter County, Texas.

The state's evidence shows that the appellant was employed as a deputy county clerk of Potter County from September 1, 1950, until January 1, 1955, and during such time was in charge of the Court Department of the office, where other deputies worked under her supervision.

It is shown that through this department all fines and costs in criminal cases and fees in civil and probate cases were collected. The records in the office showing the collection of fees in the department consisted of a receipt book, a fee book, cash book, certain envelopes, bank deposit slips, and monthly reports to the county auditor.

*According to the testimony, it appears that when a collection was made in a case, a receipt was issued therefor from a printed receipt book in which the duplicate receipt was retained. The amount collected was also entered in the cash book and fee book. At the end of each day's business the amount collected during the day was placed in an envelope and on the outside of the envelope was written the date, the number of each receipt issued and the amount for which each receipt was written, and the total amount of all receipts listed. The en-*

velope was then delivered to the bookkeeper in the clerk's office and would be returned to the Court Department on the following morning and each succeeding day until the bookkeeper made a deposit in the bank of the funds contained in the envelopes, after which time the envelopes were not returned to the Court Department but were kept stored in various places in the clerk's office.

It is further shown that the records of the County Clerk's Office for the years 1947 through 1954 were audited by Harvey Todd, a Certified Public Accountant, under a contract of employment made with the commissioners court of Potter County in December, 1954.

Auditor Todd testified that from his examination of the records he found evidence of erasures and alterations of the receipt books, fee books, and envelopes in the Court Department and discovered the first evidence of a shortage existing in the department in August or September, 1951. He further testified that in checking the total amount of the bank deposits against the total amounts on the envelopes for which the deposit was made it was ascertained, in many instances, that the bank deposit was for an amount less than the total on the envelopes. His testimony reflects that a shortage existed in the department for each of the years covered by his audit.

The state offered in evidence numerous exhibits, including duplicate receipts issued in the department for fines and costs, which indicated erasures and alterations of the words and figures in the amount for which the receipts were originally written.

Among the exhibits offered by the state was a duplicate receipt No. 6094, dated August 31, 1953, for fine and costs in a certain Case No. 16984, styled The State of Texas vs. Arnold Althaus, for the amount of $127.55. The amount for which the receipt was issued was written in words and figures as follows: "$127.55 One hundred twenty seven & 55/100," and was signed under the printed name of the clerk by *"AC Deputy."* The receipt further shows total fine and costs in the amount of $227.55 and a jail credit of $100.00.

As a witness for the state, Althaus testified that on August 31, 1953, he paid to the clerk's office a total amount of fine and costs in the sum of $227.55, and that he was only confined in jail from a noon on Sunday until the following morning. The

witness produced the original receipt No. 6094 issued to him, which was for the sum of $227.55 and did not contain a jail credit of $100.00.

The evidence further shows that the receipt issued to Althaus was listed on the envelope dated August 31, 1953, and the amount was shown on the envelope as $227.55, and that the bank deposit of the receipts of the department listed on a series of envelopes, including the envelope in question, was $100 less than the totals of the envelopes from which the receipts were deposited.

The testimony further shows that on the morning of April 5, 1955, which was two days before her arrest, the appellant was interrogated in the sheriff's office of Potter County, in the presence of Sheriff Paul Gaither, District Attorney Gib Howard, County Auditor Boone Mooreland, and Auditor Harvey Todd, in regard to the shortage in the clerk's office.

Sheriff Gaither testified that in the conversation the appellant, upon being shown certain receipt books which had been altered or erased, stated that they were in her handwriting; that she had done the alterations and that they were in her handwriting; and then stated she had a list upstairs or at her home "that might help;" that she left and returned saying that the paper was at her home and then left again and returned with three sheets of paper upon which were listed many dates, numbers and amounts. The three sheets of paper delivered by the appellant and introduced in evidence as State's Exhibit No. 182 include the following notation:

"8-31-53    6094  -  16984    227.55    200.00    100.00."

Auditor Mooreland testified that in the interview the appellant admitted that she had changed some of the receipts which appeared to have been altered and further testified: "As best I remember, she said she had a list of the alterations 'I made, as to the alterations I have made.' " before she left and returned with the papers introduced as State's Exhibit No. 182.

District Attorney Gib Howard testified that after the interview with the appellant on the morning of April 5 the appellant came to his office that afternoon, at which time they had the following conversation:

"Then she asked me, 'well, Mr. Howard, couldn't you tell

the grand jury that this list I brought in is an IOU, and that some way I can pay the money back?' and I again informed her we would just have to present the facts to the grand jury and let them be developed, and that she should get out of her mind the idea of ending her life; and then I asked her if she wouldn't to talk to her minister, and she said yes, and I asked who her minister was and she said Dr. Carl Bates, of the First Baptist Church. I then asked if she was the only person involved in the theft of the money down in the county clerk's office, and she stated that she was the only one; that she didn't want anyone else to get into trouble, that she was the only one involved in it."

Appellant did not testify, but offered character witnesses who testified that her reputation for truth and veracity and for being a peaceable and law-abiding citizen was good.

Dr. Carl Bates, Pastor of the First Baptist Church of Amarillo, testified that he had a conversation with the appellant on the afternoon of April 5, 1955, and in the conversation the appellant stated: "I am not responsible for what I am being accused of, I am not involved in the thing," and that she was not responsible for the shortages.

By Bill of Exception No. 1 appellant complains of the action of the court in overruling her motion to quash the indictment on the ground that it charged the commission of nineteen (19) separate and distinct offenses in separate counts.

The record reflects that, after overruling the motion, the court granted the appellant's motion to require the state to elect upon which count it would proceed to trial and the state elected to proceed to trial under Count Number 16 of the indictment and that such count was the only count in the indictment submitted to the jury in the court's charge.

An indictment charging separate and distinct offenses in different counts is subject to the objection of misjoinder; however, an election by the court or by the state will cure a mere misjoinder of offenses set out in different counts. Branch's Ann. P.C., Sec. 506, Page 259; Collins v. State, 43 S.W. 90.

The record reflects that the evidence admitted, relative to offenses charged under the other counts of the indictment, was not offered for the purpose of proving such counts but was admitted as showing system, intent, or as a circumstance show-

ing appellant's guilt of the offense charged in the one count submitted to the jury.

The election by the state to proceed to trial upon Count Number 16 of the indictment therefore cured any error of misjoinder in the indictment and no error is shown in the refusal of the court to sustain appellant's motion to quash.

By Bills of Exception Nos. 2 and 3 appellant contends that the court violated the rule prohibiting proof of extraneous offenses in permitting the state to introduce testimony and exhibits pertaining to other transactions in the Court Department on various dates from the year 1951 through the year 1954.

The record reflects that over the appellant's objection the state was permitted to offer in evidence 174 Exhibits consisting of duplicate receipts, envelopes, bank deposits, entries in the fee and cash books, which related to fines and costs collected in certain cases on various dates during the years 1951 through 1954 which reflected erasures and alterations on the duplicate receipts and discrepancies in the records and resulting shortage of funds in the Court Department during such period of time.

It is the appellant's contention that since the exhibits related to separate transactions on dates other than the date that the offense was charged to have been committed in Count Number 16 of the indictment they were inadmissible as being extraneous transactions, while the state insists that such evidence was admissible to show the system used by appellant in the transaction of August 31, 1953, which was the basis of the offense charged in the Sixteenth Count of the indictment and also admissible as proof of appellant's intent in the transaction.

The general rule which prohibits evidence of extraneous offenses has certain well-recognized exceptions. Under the exceptions to the rule, evidence of extraneous offenses is admissible where it shows system, intent, knowledge, identity, etc. Crutchfild v. State, 144 Tex. Cr. R. 291, 162 S.W. 2d 699; and Lawson v. State, 148 Tex. Cr. R. 140, 185 S.W. 2d 439.

In West v. State, 140 Tex. Cr. R. 493, 145 S.W. 2d 580, this court, in discussing the meaning of the term "system," said:

"By 'system,' as we understand the term, is meant the use

of the same means, the same manner and method of accomplishing a previously planned objective."

In the early case of Hennessey v. State, 23 Tex. App. 340, 5 S.W. 215, in which the appellant was charged with forging or altering an account against the State of Texas, the court, in holding certain post-office receipts in other transactions admissible in evidence, quoted with approval the rule set out in Sec. 38 of Wharton's Criminal Evidence, as follows:

"When the object is to show system, subsequent as well as prior offenses, when tending to establish identity or intent, can be put in evidence. The question is one of induction, and the larger the number of consistent facts, the more complete the induction is. The time of the collateral inculpatory facts is immaterial, provided that they be close enough together to indicate that they are part of a system."

The rule referred to and quoted in the Hennessey case was again quoted with approval in the case of Vaughn v. State, 138 Tex. Cr. R. 62, 134 S.W. 2d 290, in which case it was held that in a prosecution for theft by means of a confidence scheme testimony as to other similar transactions engaged in by the accused was admissible to show intent and system.

In Vigil v. State, 148 Tex. Cr. R. 91, 184 S.W. 2d 926, the accused, who was a route salesman for the Coca Cola Company, was prosecuted for embezzlement growing out of his changing the figures on a slip showing the number of empty cases he was returning to the company. Over objection, the state was permitted to introduce in evidence some twenty other slips made during a period of two months prior to the date of the alleged offense on which the figures had been changed.

In holding the evidence admissible, Judge Graves, speaking for the court, said:

"We think the admission of such other offenses evidence a system, as well as are usable by the jury in establishing appellant's intent in thus altering or changing the slip on the recording machine."

In proving the appellant's guilt, it was incumbent upon the state to prove her identity and fraudulent intent in the transaction of August 31, 1953. Although appellant did not testify, the testimony of Dr. Bates that she had told him she was not

involved or responsible for the shortages, together with her plea of not guilty, was a denial of guilt and raised the issue of her identity and intent in the transaction.

We think that the evidence of the other transactions similar to the transaction in question was admissible to show system and in proof of the appellant's identity and fraudulent intent.

The fact that some of the altered receipts admitted in evidence may not have been issued by the appellant did not render them inadmissible as the record reflects that they were written and issued in the department over which the appellant had supervision.

Bills of Exception Nos. 4 and 5 relate to appellant's objection to that portion of the court's charge which limited the jury in their consideration of the evidence offered concerning extraneous offenses and to the refusal of the court to give appellant's requested charge which would in substance have instructed the jury not to consider for any purpose the evidence introduced of extraneous offenses.

The court instructed the jury as follows:

"If there is evidence before you concerning various other transactions other than the alleged offence particularly set out in this indictment, you are instructed that this evidence was admitted before you solely for the purpose of showing, if it does, the system, if any, by or under which this defendant operated in the handling of the transaction specifically mentioned in the indictment, and of showing, if it does, the intent of this defendant as to the handling of the transaction alleged in the indictment, and the obtaining of the money as alleged in the indictment, and for no other purpose. If you consider it at all, you will consider it solely for the purpose for which it was admitted, and for no other, as proof of any other transaction is not proof of the charge contained in this indictment."

In Vigil v. State, supra, a similar instruction was approved by this court as a correct instruction limiting the jury's consideration of evidence offered by extraneous offenses.

Under the record, the appellant was shown to have been sufficiently connected with the extraneous transactions as to authorize the instruction given in the court's charge.

Finding the evidence sufficient to support the conviction, and no reversible error appearing in the record, the judgment is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Judge.

Though some of the altered receipts introduced over objection were written and issued by other deputy clerks working under appellant's supervision, it was the theory of the state, supported by the circumstances and the admissions of appellant, that she made the alterations and erasures shown in the receipt books and was the only person involved in the theft of money from the clerk's office. We remain convinced that these altered receipts were admissible, including those originally written and issued by other deputy clerks.

The testimony offered in appellant's behalf through her pastor, Dr. Bates, appears to raise the issue that any shortages or "discrepancies" disclosed by the audit were in some way due to the system of accounting used in the clerk's office and perhaps to the "carelessness" of others, for which she was not responsible.

If, as contended, it was necessary that a defense of lack of fraudulent intent be raised, the testimony of Dr. Bates made the testimony as to altered records other than the receipt dated August 31, 1953, admissible.

Appellant's motion for rehearing is overruled.