David **NELSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 48662.

Court of Criminal Appeals of Texas.

June 26, 1974.

L. Clifford Davis, Ft. Worth (Court-appointed), for appellant.

Tim Curry, Dist. Atty., Rufus J. Adcock, Marvin D. Snodgrass, Donald S. Gandy, Asst. Dist. Attys., Ft. Worth, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

The conviction was for murder with malice; the punishment, life.

The contention is made that the evidence is not sufficient to sustain the jury verdict.

Officer E. M. Belcher of the Fort -Worth Police Department was shot in the head by a rifle, the explosive effect of which removed part of his head. On the night of October 28, 1971, officers were notified of a dice game in progress south of the building at an establishment known as the Electric Circus in Fort Worth. Officer Richardson went to the scene about 11:49 P.M., being joined by three other officers. When the officers arrested Herbert Lee Norfleet because of an altercation with Officer Richardson, a crowd of people attacked the policemen. After Norfleet was arrested and taken away, the crowd in front of the Electric Circus began to throw rocks and bottles and to discharge pistols. In the meantime a number of other officers arrived, including Officer Belcher. The pistol shots were followed by the louder report of the discharge of a high powered rifle. The rifle shot killed Officer Belcher.

Joseph Jimison was parked in an automobile at an Enco station observing the disturbance. From his position he could see the parking lot of the Electric Circus and the Riverside Village Apartments, where the record shows that appellant lived. He saw a man with a gun go between a Mr. Quick hamburger stand and another building, saw a man point the gun and fire it, saw Officer Belcher fall, and saw the man run toward the Riverside Apartments with the gun.

The manager of the Riverside Village Apartments, Algie Howard, and Security Guards Burns and Sims had blocked off the entrance to the apartments for security reasons. They heard the loud report of the rifle and immediately thereafter saw a black man with a rifle running toward the apartments. Appellant was a black man. Burns ran into the apartment after the man and met him in the hallway. He testified that the man was similar to the man he saw running with the rifle, "clothes the same and everything." This was the appellant. Burns took appellant into custody, and as he did so, appellant who was excited and crying said, "Don't turn me over to the police. I don't want the police to have me, to get me."

Guard Sims saw the man running with the rifle immediately after he heard its report, followed the path of the man and found the rifle in a flower bed. The rifle was introduced in evidence. It was a 30–06 Springfield rifle with scope. When found it contained a spent cartridge in the barrel and three unfired cartridges in the

magazine. Appellant's fingerprint was on the top of the barrel just forward of the breech area, and there was also found his fingerprint on the middle cartridge in the rifle magazine.

Robert Bynum, called by the defense, testified that before the loud rifle report he saw appellant take a rifle out of a Buick automobile near the Mr. Quick hamburger stand. To the same effect was the testimony of Smith and Corbin, also called by appellant.

The rifle in question and its case [State's Exhibits 2 and 3] were identified by Reginald Phillips as his, which were stolen from his pickup on October 17, 1971. Lee Lagrove testified that he and two friends stole the rifle and case in question and the next day sold them to appellant. George Knight, an employee of Montgomery Ward's testified that appellant bought a box of Hawthorne 30–06 cartridges from him on October 21, 1971. An empty box of Hawthorne 30–06 cartridges was found in appellant's apartment after the shooting of Officer Belcher.

Patty Ruth Clark went to the Electric Circus that night with Norfleet. After Norfleet was arrested and taken to jail, she got in a car to get a ride home, and saw appellant whom she identified with a rifle in his hand come from behind a sign.

Officers computed the trajectory of a bullet hole in the Electric Circus and by following it found the rifle case [State's Exhibit No. 3] at the location where Patty Ruth Clark said she saw appellant with the rifle.

Appellant testified and denied the shooting, but admitted he was at the scene. The court charged on circumstantial evidence.

We conclude that the verdict of the jury was supported by sufficient evidence.

In his first ground of error, appellant complains of the court's refusal to order discovery of all statements taken by the State from witnesses, and "particularly the witnesses, Kay Collins, Robert Dean [Gene] Bynum, Rick Parker, Charles Smith, Bernie [Ernie] Corbin, Penny Scott, Clarence Middlelrods and other witnesses from whom the State had statements or information bearing evidence which would tend to show the Defendant innocent . . . ."· Appellant's fourth ground of error asserts that the District Attorney knowingly and willingly suppressed evidence which tended to show that the crime was committed by some person other than the defendant, and "particularly, it suppressed the statements of Robert Bynum, Bernie [Ernie] Corbin, Charles Smith, and other statements . . . ." The record shows that appellant's pretrial motion, entitled "Jencks Motion," requesting the court to instruct the State to have any written statements of witnesses that were to testify for the State available for cross-examination purposes, was granted and that the order of the court was complied with by the State's attorneys. Of the witnesses named by appellant in his grounds of error, none testified for the State; Bynum, Corbin, Scott, and Smith were called to the stand by appellant. It is apparent from the record and appellant's brief that the statements he was denied were those of witnesses the State did not call to the stand. The rule announced in Gaskin v. State, 172 Tex.Cr.R. 7, 353 S.W.2d 467, allowing inspection of previous statements of State's witnesses is not applicable. Nor does the record reflect that the State used any statement denied to appellant so as to violate the "use before the jury rule," Bizzarri v. State, Tex.Cr.App., 492 S.W.2d 944; Graham v. State, Tex. Cr.App., 486 S.W.2d 92. Appellant's contention that the State withheld evidence favorable to his defense in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, is not supported in the record. The State furnished appellant a full list of all witnesses with knowledge of the incident contacted by the State, and appellant had the opportunity to question them. There is nothing in the record to show that the contents of any statements

taken by the State were favorable to appellant's defense; the testimony of the four called by appellant himself indicates the opposite. Though the record shows that the court, upon appellant's request, instructed the State "to preserve" the statement of witness Bynum, no demand was made that that statement or any statement be presented to the court for inspection or for inclusion in the record so that it might be available for this court's inspection and review. Appellant has shown no injury. Austin v. State, Tex.Cr.App., 432 S.W.2d 535; Schepps v. State, Tex.Cr.App., 432 S.W.2d 926. No error is shown.

█ Appellant complains in his third ground of error that he was not furnished a transcript of the testimony of the witnesses Clark and Burns before the grand jury. There is nothing in the record to show that they testified before the grand jury or that, if they did so, their testimony was taken down by a reporter, nor is any particularized need shown for such transcript, if any exists. No error is shown. Acuff v. State, Tex.Cr.App., 433 S.W.2d 902; Graham v. State, Tex.Cr.App., 486 S.W.2d 92; Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973.

█ In his fifth ground of error, appellant complains that the District Attorney knowingly and willingly introduced testimony that the State knew to be false in violation of appellant's Fourteenth Amendment rights under Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. In particular, appellant complains that State's witness Patty Clark was forced by police pressure to implicate appellant in her sworn statement introduced into evidence by appellant at the trial. There is nothing in the testimony of Miss Clark, nor in her statement, nor elsewhere in the record to show that any part of her statement was false or that the State knew of any alleged perjury. On vigorous cross-examination by appellant's counsel, Miss Clark emphatically denied his accusations that her testimony was false. There being nothing in the record in support of the allegation, no error is shown.

█ It is argued by appellant in his eighth ground of error that the court erred in not charging the jury on the defense of alibi as requested by him.

When appellant testified before the jury at the guilt stage of the trial, he said that at the time the disturbance near the Electric Circus arose he was inside the building, that he came outside, saw the policemen and heard the gunfire, even that he saw a policeman get shot. Hence, his own testimony and that of all other witnesses placed him at the scene of the offense charged and not elsewhere.

"The defense of alibi arises when there is evidence that the accused is at a point where he could not have been guilty of participating in the offense." West v. State, 140 Tex.Cr.R. 493, 145 S.W.2d 580. See also Black's Law Dictionary 4th, Alibi.

Here the evidence places the appellant at the scene "where the action was" and does not raise the issue that he was so far away as not to have been able to have fired the fatal shot; thus, it did not call for a charge on alibi. Friga v. State, Tex.Cr. App., 488 S.W.2d 430; Black v. State, Tex.Cr.App., 505 S.W.2d 821. We overrule this contention. ·

██ On this appeal for the first time appellant in his tenth ground of error objects to the court's charge because it contained a charge on principals. Whether the evidence raised such an issue may be a debatable question,[1] but before error can be predicated upon a defect in the charge a written objection must be filed and brought to the trial court's attention and a ruling obtained thereon to give the court

---

1. In applying the law of principals to the facts, the court charged that "if the defendant, either alone or as a principal" committed the act charged, etc. This rendered the error, if any, harmless. Hannon v. State, Tex.Cr.App., 475 S.W.2d 800.

an opportunity to consider and rule upon the question. Such was not done here, and nothing is presented for our review. Art. 36.14, Vernon's Ann.C.C.P.; Austin v. State, Tex.Cr.App., 398 S.W.2d 116; James v. State, Tex.Cr.App., 418 S.W.2d 513.

The contention is made by appellant in his eleventh ground of error that the seizure of the empty Hawthorne 30–06 ammunition box from the trash can in his apartment was illegal.

■ The court held a hearing upon such objection outside the presence of the jury. It was developed that appellant and Curtis Johnson jointly occupied the apartment in question at the Riverside Village Apartments as roommates; that at the time the officers arrived at the apartment appellant was not present, but Curtis Johnson was; that the officers had no warrant for appellant's arrest, and no search warrant; that Johnson was asked for his permission to search the apartment and was told that he did not have to consent; that Johnson denied giving consent, but three of the officers present said that he gave his consent.

At the conclusion of such hearing, the court overruled the motion to suppress and entered his findings in the record that Johnson freely and voluntarily gave his consent to the search and admitted the empty cartridge box (State's Exhibit No. 4) into evidence.

Since Johnson occupied the apartment as a roommate along with appellant, his consent to the search was sufficient. No error is shown. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684; Williams v. State, Tex.Cr.App., 502 S.W.2d 130.

Finally, in his twelfth ground of error, appellant says that the court erred in admitting testimony concerning other criminal activity which occurred at the time Belcher was killed.

■ It is true that there was much evidence about the riot and what others were doing at and about the time that Officer Belcher was shot. Some of this was admitted without objection. None of such evidence showed an extraneous offense by appellant. We fail to see how the case could have been tried without imparting to the jury the background and accompanying facts within the framework of which Officer Belcher was killed. The offense did not occur in a vacuum and the jury had the right to know the surrounding facts. This was res gestae and was properly admitted in evidence. Albrecht v. State, Tex.Cr.App., 486 S.W.2d 97; Van Slyke v. State, Tex.Cr.App., 489 S.W.2d 590.

We have considered additional grounds of error not herein discussed and find them to be without merit. All of appellant's grounds of error are overruled.

The judgment is affirmed.

Opinion approved by the Court.