Ezra Lee TATMON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–88–074 CR.

Court of Appeals of Texas,
Beaumont.

March 23, 1989.

Discretionary Review Refused
June 28, 1989.

James A. DeLee, Port Arthur, for appellant.

John R. DeWitt, Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appellant was charged with aggravated robbery, to wit, that he, in the course of committing theft of property which was owned by the complainant did intentionally and knowingly threaten and place the complainant in fear of serious bodily injury and death, by using and exhibiting a deadly weapon, being a firearm. There was one enhancement paragraph, being a final conviction of the felony of robbery on July 15, 1983. The jury found the Appellant guilty and found him to be a repeat offender, assessing punishment at thirty years.

■ The Appellant avers that error was committed in overruling his timely motion to suppress an identification of the accused, thereby allowing the presentation of in-court identification evidence of the accused over his objection. A previous trial of this matter ended in a hung jury. The basic facts are these: on December 14, 1986, a Diamond Shamrock service station and convenience store located on Jefferson Drive in Port Arthur was robbed at gun-point. Roseanne Planty was working as clerk at the time of the robbery and was also the complaining witness. After the robber had left the store, Ms. Planty immediately contacted her supervisor, pushed the alarm button and wrote down a physical description of the robber. Several days after the robbery the complaining witness was shown certain "mug books" to examine. On this occasion she did not recognize the Appellant therein. Several days later, she was shown a photographic spread of five pictures. Again, she did not identify any one of them as the Appellant. The complainant said that the accused came into the store again several days after the robbery and she recognized him at once. Thereafter there was a photographic line-up for the complainant to view. The complainant swore that there was no suggestion made to her as to which one to choose in the line-up. The complainant said that she had recognized the individual that had robbed her in the line-up.

The complainant affirmatively testified that she saw the individual who robbed her on the occasion in question in the courtroom. She pointed him out and described his clothing. The court then agreed that the record should reflect that the complaining witness had identified the defendant in court.

She stated that she was working by herself around 6:00 p.m. in the evening in question, that it was dark, and that there were people in the store at the time. At first, the Appellant approached a coke cooler and later went around to get a 7-Up out of the cooler. Appellant came to the counter to ask if hamburgers were being sold. The complainant and the Appellant were then face to face, no more than a couple of feet apart. The complainant directed him to where the hamburgers were. Appellant used the microwave to heat them. After the hamburgers were heated there were no other customers in the store. The complainant swore that the Appellant came behind the counter and was behind her. She felt something in her back.

"Q And what did you do?

"A  I turned around and said you scared the s—— out of me."

She was not joking. He then said this is a holdup, don't move. The complainant saw a gun. She described the gun as a pistol type gun with a short barrel. She thought the color of the gun was either blue or bluish-black. She testified that she had no doubt in her mind that the gun involved was a real gun. She said that she was scared to death and that she definitely felt like she could have been killed or seriously hurt. She was told to move and put her hands on the counter. Her assailant then pushed the key on the cash register and he started taking money out of the register. The money was placed in a bag. The complainant was told to get down on the floor, which she did.

We have looked at the photographic spreads, copies of which are in evidence. We do not find them to be suggestive.

The State proffered an identification technician who had received training in the area of fingerprint identification. He outlined his training and experience. This fingerprint identification expert witness explained about taking some latent prints; he explained that certain acids from the fingertips and certain amino oils were left as a residue. From the residue the fingerprint expert witness did accumulate a latent print. He took the latent print and applied it to a white, contrasting background which brought out the details of the fingerprints. In summary, he had obtained latent fingerprints and what he termed as "inked" fingerprints. He testified the latent print lifted from a Pepsi–Cola bottle, identified as State's Exhibit No. 14, was that of Ezra Tatmon. He also rolled some prints from Ezra Tatmon personally, whom he identified as being the defendant in the courtroom on the day of his testimony. This witness also testified that the pistol, being a .22 caliber pistol, if fired into an individual was capable of causing either death or serious bodily injury.

The complainant said she did not see the accused take any Pepsi–Cola out of the dispenser but that she could not see that dispenser very well. However, prior to the time that the accused came in, she had worked in the area and she had drunk a cup of coffee there and she saw no Pepsi–Cola bottle or anything else setting on the Coke boxes. She testified that her store did not sell a lot of Pepsi and that Coke was on sale that week which was usually what the majority of her customers bought.

On re-direct examination the complainant testified that the same defendant, Ezra Tatmon, came into the Diamond Shamrock service station about a week or eight days after the robbery and she recognized him. She testified:

"A  Well, I was talking to the manager when I was filling up the box with ice. He walked in the door, he looked at me and I looked at him. I automatically recognized who he was.

"Q  Did he see you react?

"A  Yes, he did.

"Q  What did he do?

"A  He just kind of smirked at me and at that time we had been carrying on a conversation, we were talking, and I just quit talking all of a sudden and the manager looked at me and wanted to know what was the matter...."

At that point the complainant said she told the manager that "that was the guy that robbed me." It was after this second personal encounter with the accused that she identified him in the photographic line-ups. Her written description was that of a black male, 5' 7", about 175 pounds, wearing jeans and white sneakers and a gold turtleneck type of garment. We find no error in the presentation of the in-court identification and having reviewed the entire record under the correct standards, we find the evidence is sufficient to sustain the jury's verdict.

■ Next, the Appellant avers that the prior conviction used for enhancement of punishment was void. The Appellant contends that the judgment in the pen packet is void and violates the decision in *Ex parte Hayward*, 711 S.W.2d 652 (Tex.Crim.App. 1986). We do not find that the pen packet

is void; nor is the judgment therein void. *Ex parte Hayward* plainly did not involve the question of a void judgment. In our record it was shown that this defendant had been taken to the Department of Corrections, not so in *Hayward.* The facts in the case at bar are different and distinguishable from *Hayward,* and in *Hayward,* the Court wrote:

"The sentence in the instant case is reformed by deleting the phrase 'This sentence to begin on October 11, 1978.' As reformed the sentence is valid as is the conviction."

*Id.* at 656.

The Court concluded with this holding:

"The sentence, as reformed, being valid, the relief prayed for is denied, and the Sheriff of Jefferson County is ordered to arrest and take into custody the applicant for the purpose of carrying out the sentence, as reformed.

"It is so ordered."

*Id.* at 657.

We overrule the Appellant's contention as set forth in his point of error three.

■■■ The next two points of error are that the trial court failed to grant the defendant's motion for a mistrial because of prejudicial arguments and that the trial court erred in allowing a weapon to be placed in evidence for demonstration purposes only. We do not think that the record sustains the Appellant's arguments and contentions on point of error four. We have read the argument of the prosecution at the punishment stage and the record does not reflect how the State's attorney used the demonstrative weapon involved. However, the court sustained the objection and promptly and strictly instructed the jury to totally disregard the last comment to the jury about the exhibition of the weapon. Under this record we do not find error. The instruction of the court cured any harm. See *Carey v. State,* 537 S.W.2d 757 (Tex.Crim.App.1976). We conclude that the particular weapon involved was before the jury for the purposes of demonstration only and as such, it had relevancy to the case because it was a type or species of demonstrative or real evidence that had

a tendency to show the existence of a fact, which was of consequence to the determination and decision that makes the fact more probable than it would be without the demonstrative or real evidence. See *TEX. R.CRIM.EVID. 401.*

Furthermore, a determination of the admissibility of a handgun or weapon similar to the one allegedly used in the commission of an offense is made upon the same sound basis as the admissibility of other kinds of evidence, especially real or demonstrative evidence. *Simmons v. State,* 622 S.W.2d 111 (Tex.Crim.App.1981). A well established rule declares that weapons used in the commission of a crime are admissible. They give a more complete picture to the jury concerning the facts and surrounding circumstances of the offense. These offenses, of course, do not occur in a vacuum. *Wilson v. State,* 163 Tex.Crim. 202, 289 S.W.2d 597 (Tex.Crim.App.1956); *De La Garza v. State,* 650 S.W.2d 870 (Tex.App.— San Antonio 1983, pet. ref'd). In *De La Garza* the Court wrote:

"Physical evidence, such as the gun, may be admissible if it is relevant to the proof of the offense, and its relevancy is not outweighed by prejudicial effects. An object which is part of the offense (sometimes called '*res gestae* of the offense') is admissible in evidence. The weapons with which the crime was committed, or alleged to have been committed, are admissible. *Wilson v. State,* 163 Tex.Cr.R. 202, 289 S.W.2d 597, 599 (Tex.Cr.App. 1956). The general rule is that an offense does not occur in a vacuum and it is proper to admit evidence of the surrounding facts. *Nelson v. State,* 511 S.W.2d 18, 22 (Tex.Cr.App.1974)."

*Id.* at 877.

Having overruled the Appellant's points of error and each of them, we affirm the judgment and sentence below.

AFFIRMED.